Greco, J.
Plaintiff Procopio Construction Co., Inc. (“Procopio”) brought this action to recover the balance due on its contract to assemble and install a prefabricated house for defendants Luigi and Mary Anne DiMarco. The defendants counterclaimed for damages allegedly caused by Procopio’s faulty work. After the case against Mary Anne DiMarco was dismissed, the matter went to trial and the court found for Luigi DiMarco on both his counterclaim for breach of contract and Proco-pio’s original complaint.[2] Judgment was entered for DiMarco in the amount of $30,000.00, and Procopio appealed pursuant to Dist./Mun. Cts. R. A. D. A, Rule 8C.
As the trial judge found, the components of the prefabricated house in question were manufactured by a third party and arrived on the home site “in four pieces or ‘boxes.’” It was Procopio’s “job ... to set the boxes on the foundation, to attach the boxes to each other properly, to ‘button up’ the house as attached, and to do other work as specified in the [parties’] contract.” After the boxes were set in place,
it was seen that the house was several inches bigger than the foundation. The foundation was the proper size. The house was a bit too large, but the major problem was that the boxes were not bolted together tightly, causing the house to move and to be out of plumb. That problem ... caused considerable problems to the house.
*167 As a result of these problems, DiMarco did not pay the $13,800.00 balance due under the contract.[3] In arriving at his award of $30,000.00 on the counterclaim, the trial judge was able to consider the testimony of Joseph Procopio, the president of the plaintiff corporation, homeowner Luigi DiMarco, and DiMarco’s expert witness (whose testimony is discussed below).
On this appeal, Procopio argues: (1) that the testimony of DiMarco’s expert as to the costs to correct the problems with the house was admitted without a proper foundation, (2) the expert’s testimony was beyond the scope of what DiMarco had represented it would be in a pretrial memorandum, and (3) the evidence required a finding for Procopio on its original complaint.
1. DiMarco called Jack Elliot (“Elliot”) as his expert witness. Elliot testified that he was a construction consultant with a master’s degree in business administration. He had taught construction related courses at Wentworth Institute of Technology, Harvard University, the University of Rhode Island and the Rhode Island School of Design. He had personally built between one-hundred and fifty and two hundred houses, including “a few modular homes.” Elliot also testified that he made a visual examination of the DiMarcos’ house. He determined that because parts of the house were not properly bolted together, it had a tendency to “walk,” or “move a little bit.” This movement caused the house to be out of plumb which, in turn, caused walls and windows to crack, put floors “out of kilter,” and allowed water to enter. In Elliot’s opinion, it would cost $4,000.00 to $5,000.00 to hire a structural engineer to assess the full damage and to determine if in fact it could be corrected.
Over Procopio’s objection, Elliot was permitted to testify that assuming the problems could be corrected, the homeowner “could spend twenty to thirty thousand dollars at the drop of a hat” to do so. Procopio again objected, asking “on what basis.” When asked by DiMarco’s attorney for such a basis, Elliot testified that in addition to the cost of the structural engineer, a crane would have to be rented, walls opened, the debris removed, and the work redone, which would include the replacement of doors and windows. He further testified that non-union professional carpenters would bill at the rate of $50.00 per hour. In addition, it would cost $4,000.00 to bring the house in line with the foundation, $4,000.00-$5,000.00 to relocate the vent pipe, $1,200.00-$1,500.00 to relocate the electrical service, $2,000.00 to repair the jacuzzi, and $600.00-$800.00 to replace a counter.
Procopio argues on this appeal that Elliot’s testimony as to damages was based on “generalized conclusions” and “surmise and conjecture.” There was no error. “The admission of expert testimony lies largely in the discretion of the trial judge.” Commonwealth v. Devlin, 365 Mass. 149, 152 (1974). See also Giannasca v. Everett Alum., Inc., 13 Mass. App. Ct. 208, 211 (1982). Based on his qualifications and experience, Elliot had sufficient “education, training, experience and familiarity” with the construction of houses, and specifically modular homes, to render his testimony of assistance to the fact finder. See Gill v. North Shore Radiological Associates, Inc., 10 Mass. App. Ct. 885, 886 (1980). See also Letch v. Daniels, 401 Mass. 65, 68 (1987). Moreover, Elliot made a personal inspection of the DiMarcos’ home, and was thus in a position to apply his general knowledge of repair costs to the problems he observed with the house. See Fourth St. Pub, Inc. v. National Union Fire Ins. Co., 28 Mass. App. Ct. 157, 161 (1989).
2. At the conclusion of Elliot’s testimony, Procopio moved to strike it on the ground that it was inconsistent with DiMarco’s forecast of the testimony in his pretrial memorandum. That memorandum has not, however, been made part of the record before us.[4] Putting that procedural defect aside, we accept the representa *168 tion made at trial by Procopio’s attorney that the pretrial memorandum stated that Elliot would “testify regarding deviations from state and local building codes.” The trial judge would have been justified in concluding that the problems Elliot described at the DiMarcos’ house fell under the general category of code violations. Even if the challenged testimony went beyond that description,
a trial judge has broad discretion in deciding whether to permit expert testimony when the proponent has not given proper notice of the identity of the expert or the subject matter of the expert’s anticipated testimony, either in his answers to interrogatories or in his supplementary responses.
Elias v. Suran, 35 Mass. App. Ct. 7, 10 (1993). We conclude that the same discretion would exist where the representation was made in a pretrial memorandum and, further, that the trial court did not abuse that discretion in refusing to strike Elliot’s testimony herein. In so concluding, we note that two and a half months before the trial, DiMarco complied with the requirements of Mass. R. Civ. P., Rule 26(e) (1) (B), by filing a supplemental answer to interrogatories in which he stated that in addition to “deviations from state and local building codes,” Elliot would testify to “the respects in which construction was defective or unworkmanlike; and the reasonable and customary cost of repairing the defects.” A list of specific defects was provided.[5] See Resendes v. Boston Edison Co., 38 Mass. App. Ct. 344, 350 (1995); Giannaros v. M.S. Walker, Inc., 16 Mass. App. Ct. 902, 903 (1983).
3. Finally, Procopio argues that the trial judge erred in denying its request for a ruling of law that a finding in its favor was required. There is very little in Proco-pio’s brief that passes for argument on this point. From what was stated in the brief and at oral argument, we discern essentially a two-pronged argument: first, that the evidence on damages was too speculative to form the basis for the court’s finding, and second, that even if damages were awarded to DiMarco on his counterclaim, the court was still required to award Procopio the balance due on the contract.
As to the first argument, “ [i]t is settled that mere uncertainty in assessing the amount of damages should not jeopardize an injured party’s right to recover as long as those damages are the certain result of the wrongdoing.” McKenna v. Begin, 5 Mass. App. Ct. 304, 311 (1977). The court heard conflicting evidence at trial as to the cause of the problems with the house, and resolved that issue against Procopio. While the trial judge could not then determine damages “by *169 speculation or guess, an approximate result [was] permissible if the evidence show[ed] the extent of the damages to be a matter of just and reasonable inference.” Id. “Much must be left to estimate and judgment, sometimes upon meager evidence.” Colangeli v. Construction Service Co., 353 Mass. 527, 530 (1968), quoting from Piper v. Childs, 290 Mass. 560, 563 (1935). The judge in this case had before him not only the expert testimony, but also the testimony of DiMarco himself.[6] Some of the evidence about the cost of necessary repairs was very specific; in other aspects, it was more general. However, even where it was general, there was evidence of both the nature of the work to be done and the hourly labor costs involved. Thus, in the aggregate, there was ample evidence to support the court’s finding on the counterclaim. See Colangeli v. Construction Service Co., supra at 529-530.
A finding for Procopio was not required on the complaint. There was evidence to warrant a finding that Procopio did not fully perform all of its obligations under the contract, that the payments received fully compensated (or even more than compensated) Procopio for the work it did do, and that it would cost DiMarco an additional $30,000.00 just to cure the problems caused by Procopio. See PDM Mechanical Contractors, Inc. v. Suffolk Construction Co., 35 Mass. App. Ct. 228, 230-231 (1993). Alternatively, it was open to the trial judge to calculate damages “in the amount of the reasonable cost” to DiMarco “of completing the contract and repairing [Procopio’s] defective performance less such part of the contract price as has not been paid.” Louise Caroline Nursing Home, Inc. v. Dix Construction Corp., 362 Mass. 306, 311 (1972). Under this theory, the court would certainly have had to find that the completion and repair costs actually exceeded $30,000.00. Considered in the light most favorable to DiMarco, however, the evidence would have also supported such a finding.
Appeal dismissed.[7]
So ordered.

 The defendant has not appealed the court’s judgment for Procopio on the defendant’s counterclaims for misrepresentation and G.L.c. 93A unfair and deceptive acts.

 Prior payments made by the DiMarcos totaled $141,175.00.

 See, as to appellant’s duty to present complete record, Shawmut Community Bank, N.A. v. Zarami, 411 Mass. 807, 811 (1992); Harvard University v. Goldstein, 1999 Mass. App. Div. 67, 68.

 The supplemental answer recited that Elliott’s testimony would include the following: “1. The basement ceiling is not insulated. 2. The thresholds of the doors both in the front and back overhang the frame of the house by several inches and are unsafe. 3. The rear of the house overhangs the foundation by several inches. 4. The basement stairs have a riser height that exceeds what the code allows and, further, the riser height is inconsistent from stair to stair. 5. The house is not plumb, with the result that doors and windows are out of alignment. At least one window has cracked, and there are also cracks in the walls. 6. The service panel to the Jacuzzi is improperly placed, making the controls inaccessible.” The answer further indicated that Elliott would testily about numerous additional instances of poor workmanship as had been previously identified in answers to interrogatories, correspondence and deposition testimony. The supplemental answer thus satisfied the Rule 26(e)(1)(B) mandate to furnish “the identity of each person expected to be called as an expert witness at trial, the subject matter on which he is expected to testify, and the substance of his testimony.” “Absent here is the sort of unfair surprise which Rule 26 seeks to prevent.” Resendes v. Boston Edison Co., supra at 351.

 DiMarco testified, for example, that it would cost him $750.00 to repair damage to the kitchen floor caused by water coming in through the defective French doors and $17,000.00 to repair the overhang problem.

 While the argument in parts of the appellant’s brief may well have been deficient, as alluded to above, we have elected to consider the questions presented. See Dist./Mun. Cts. R. A. D. A., Rule 16(a) (4). Despite the deficiencies, we do not consider this appeal “frivolous” or as having been prosecuted “in bad faith.” Therefore, the appellee’s request for sanctions pursuant to Rule 25 is denied.