ADOPTION OF HANK
(and three companion cases[1]).

No. 01-P-240.

Hampden. June 28, 2001. - October 2, 2001.

Present: RAPOZA, KANTROWITZ, & McHUGH, JJ.

*Parent and Child,* Custody, Adoption, Dispensing with parent's consent to
    adoption. *Adoption,* Dispensing with parent's consent.

In a proceeding under G. L. c. 210, § 3, to dispense with the need for parental
    consent to the adoption of a minor child, this court concluded that the
    evidence that the father was unfit was clear and convincing, where seven
    of the factors listed in G. L. c. 210, § 3, were present and unrebutted.
    [690-692]
Although not condoning the actions of a Probate Court judge in adopting
    verbatim proposed findings of fact submitted by the Department of Social
    Services without writing an independent set of findings, this court
    concluded that the findings of fact and conclusions of law were amply sup-
    ported by the evidence. [692-693]

PETITIONS filed in the Hampden Division of the Probate and
Family Court Department on June 23, 1997.

The cases were heard by *David G. Sacks,* J.

*Jeanne M. Kaiser* for the father.

*Stephen Dick,* Assistant Attorney General, for Department of
Social Services.

*Ann E. Johnston* for the children.

KANTROWITZ, J. The father appeals from a decision of a Probate
and Family Court judge to terminate the father's parental rights
to his four sons pursuant to G. L. c. 210, § 3.[2] He argues that
the judge failed to pay close attention to the evidence and that

---

[1] Adoption of Charles, Derrick, and Christopher. All the children's names
are fictitious. Hank was born October 30, 1989; Charles on October 12, 1991;
Derrick on October 4, 1992; and Christopher on March 14, 1994. Hank and
Christopher have multiple special needs.

[2] The mother is not a party to this case.

there was insufficient evidence for a finding of unfitness. The father also contends that, after a trial based without objection solely on exhibits of the Department of Social Services (DSS), the judge's verbatim inclusion of the findings proposed by DSS in his decision was improper. While the preferred practice is for the judge to write an independent set of findings, we nonetheless affirm as we conclude that there was sufficient evidence presented, to which the judge paid the requisite degree of attention.

1. *Sufficiency of the evidence.* Biological parents have a fundamental right to the custody of their children. *Petitions of the Dept. of Social Servs. to Dispense with Consent to Adoption*, 20 Mass. App. Ct. 689, 693 (1985). However, the State may sever the parent-child legal relationship where there is "clear and convincing evidence that the parent is currently unfit to further the child's best interests." *Adoption of Carlos*, 413 Mass. 339, 348 (1992). This is an "extreme step." *Adoption of Frederick*, 405 Mass. 1, 5 (1989). General Laws c. 210, § 3(*c*), lists several factors which a court should consider in determining the fitness of the child's parents.

In the case at bar, the evidence was overwhelming concerning the numerous shortcomings of the father. Briefly, the uncontested evidence before the judge showed that the father was a long-time substance abuser (cocaine), and was abusive and controlling. Prior to being taken into DSS custody, the children lived in a dirty, sparsely furnished apartment[3] which smelled like urine and feces. The children were not dressed appropriately, were suffering from eye infections, and their screams were heard when they were beaten. During an investigative visit to the apartment, Derrick, a toddler at the time, was seen walking around with little toy tires in his mouth. Upon removal of these items from his reach, Derrick picked up and began sucking on an empty disinfectant bottle.

The children have remained in the care of DSS since DSS obtained custody in February, 1994. From 1994 through December, 1999, the father repeatedly attended different

---

[3]The judge noted that "[t]he parents explained to the investigator that they removed [the furniture] because the children were breaking it[, and that t]hey would bring it back when the children were older."

substance abuse programs. Except for a short period in 1996, the father was unable to provide negative urine samples. In April, 1997, the father was arrested on drug charges and sent to jail. The father was released in February, 1998. Even when not incarcerated, the father rarely visited his children.

DSS held three foster care reviews between December, 1997, and June, 1999. At the reviews, the father was found not to have completed any substance abuse program and to be non-compliant with the services offered. The father denied having positive urine screens and refused to participate in therapy or in a batterers program.

The last day the father saw his children was on September 30, 1999, when he attended a supervised visit at a DSS office. The father cancelled his appointments for supervised visits in October, November, and December of 1999. He also cancelled a meeting with his social worker on December 16, 1999. The father failed to attend the pretrial conference held on March 29, 2000, and the hearing held on May 9, 2000.

The unrebutted evidence shows that seven of the factors listed in G. L. c. 210, § 3(c), were present: (ii) The children were abused and neglected by the father, who was offered services of which he did not avail himself. (iii) DSS had custody of the children for over six months and the father "[had] not maintained significant and meaningful contact" with them. (iv) DSS had custody of the children for more than twelve of the fifteen months preceding the hearing, and the father failed to utilize corrective services on a regular and consistent basis. (vi) The father failed to provide proper care for his children and there was a reasonable expectation that he would not have been able to offer such care within a reasonable time. (viii) The father failed to make the effort required to remedy the conditions that created the risk of harm due to abuse or neglect of the children. (x) The father wilfully failed to visit his children. (xii) The father had a long-term substance abuse condition that was "reasonably likely to continue for a prolonged, indeterminate period," said condition making him "unlikely to provide minimally acceptable care of the child[ren]."

We conclude that there was clear and convincing evidence

that the father was unfit. Compare *Adoption of Katharine*, 42 Mass. App. Ct. 25, 32 (1997).

2. *Incorporation of proposed findings.* Although represented by counsel, the father, as noted, failed to attend the pretrial conference held on March 29, 2000, and the hearing on May 9, 2000.[4] Also as previously noted, the evidence, which consisted solely of exhibits, was entered without objection.[5] The judge requested that the parties file proposed findings of fact and conclusions of law. The judge then incorporated DSS's proposed findings of fact "by reference."[6] He rejected, however, DSS's proposed adoption plan, finding that it was not in the best interests of the children.[7]

"A judge is required to exercise utmost care in custody proceedings and must make 'specific and detailed findings demonstrating that close attention has been given the evidence and that the necessity of removing the child from his or her parents has been persuasively shown.' " *Custody of a Minor (No. 2)*, 392 Mass. 719, 725 (1984) (citations omitted). The judge here, however, adopted "by reference" the proposed findings of DSS in his order. We do not condone such practice as it runs afoul of the purposes of rule 52(a) of the Massachusetts Rules of Civil Procedure, 365 Mass. 816 (1974).[8] "[Rule 52(a)] serves to (1) insure the quality of a judge's decision making

[4]The fact that the father was not present at the trial did not lessen the burden of proof of DSS, see *Adoption of Harriet*, 29 Mass. App. Ct. 111, 114 (1990), nor did it preclude him from filing a notice of appeal, pursuant to Mass.R.A.P. 3(a), as amended, 378 Mass. 927 (1979). A judge, obviously, may take nonappearance into account in making his findings and decision. Compare *Adoption of Nadia*, 42 Mass. App. Ct. 304, 306-308 (1997).

[5]The exhibits consisted of affidavits of DSS social workers for the father and the children, as well as the supervisor. While the social workers were present, the father's attorney chose not to cross-examine them.

[6]The judge stated as follows: "For purposes of the findings of fact in this *prima facie* proceeding, the proposed findings submitted by DSS are incorporated by reference as though restated, including [the findings in] the addendum" (emphasis original).

[7]DSS's plan was to have Charles adopted by his current foster parents and to recruit an adoptive home for Hank, Derrick, and Christopher. All but Charles opposed DSS's adoption plan. The judge decided to address the plans for adoption after the decision relative to the mother's parental rights had been made.

[8]Rule 52(a) states in relevant part as follows: "In all actions tried upon the facts without a jury, the court shall find the facts specially and state separately

process by requiring simultaneous articulation of the judge's underlying reasoning; (2) assure the parties that their claims have been fully and fairly considered; and (3) inform an appellate court of the basis on which a decision has been reached." *Cormier* v. *Carty*, 381 Mass. 234, 236 (1980).

The standard of review does not change if a judge has adopted a party's proposed findings verbatim; we continue to review those findings under the clearly erroneous standard.[9] See *Adoption of Ramon*, 41 Mass. App. Ct. 709, 713 n.2 (1996). However, where the judge adopts a party's findings verbatim, the findings are "subjected to stricter scrutiny by an appellate court." *Cormier* v. *Carty*, *supra* at 237.

After such scrutiny of the evidence submitted at trial, we conclude that the findings of fact and conclusions of law were amply supported by the evidence. Compare *Adoption of Erica*, 426 Mass. 55, 59 n.4 (1997). The fact that the judge adopted certain findings by DSS, but not their adoption plan, is further indication that he carefully considered the evidence presented at trial and the proposed findings submitted by DSS, the children, and the father.

*Decrees affirmed.*

---

its conclusions of law thereon . . . . Findings of fact shall not be set aside unless clearly erroneous." We note that, although the Massachusetts Rules of Civil Procedure do not apply to proceedings to dispense with consent to adoption, we rely on those rules by analogy as a cogent standard. See *Adoption of Reid*, 39 Mass. App. Ct. 338, 341 (1995).

[9]"A finding is clearly erroneous when there is no evidence to support it, or when, 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake had been committed.' " *Custody of Eleanor*, 414 Mass. 795, 799 (1993) (citation omitted).