Coven, J.
Defendant Norfolk and Dedham Group (“Norfolk”) has appealed the judgment entered for plaintiff North Shore Chiropractic (“North Shore”) on its breach of contract, G.L.c. 90, §34M, and G.L.c. 93A and G.L.c. 176D claims arising from Norfolk’s refusal to pay Personal Injury Protection (“PIP”) benefits for chiropractic services rendered by North Shore to its patient, Israel Vega (“Vega”). After trial, the jury returned a verdict for North Shore on its breach of contract claim and awarded damages in the amount of $1,567.75. Having reserved judgment on North Shore’s G.L.c. 93A claim, the court then found for North Shore, and awarded double damages, plus attorneys fees and costs. Judgment was entered in the total amount of $19,474.72.
On appeal, Norfolk contends that the trial court committed numerous reversible errors of law, including: (1) excluding Norfolk’s fact witnesses; (2) failing to find that Vega himself breached the insurance policy contract when he provided Norfolk with a prejudicially late notice of his claim; (3) improperly awarding damages to North Shore pursuant to G.L.c. 93A; (4) failing to provide the jury with instructions on the impact of Vega’s noncooperation in filing his PIP application; (5) failing to dismiss *181 North Shore’s complaint when it did not introduce an actual insurance contract into evidence; and (6) denying Norfolk a fair trial.[1]
At trial, the court adopted North Shore’s proposed findings of fact and rulings of law.[2] An appellate court will set aside such findings only if they are “unsupported by the trial evidence or tainted by error of law.” Sullivan v. Ross, 2002 Mass. App. Div. 60, quoting Macone Bros., Inc. v. Strauss, 1997 Mass. App. Div. 95, 96. Appellate courts may not disregard or set aside a trial judge’s findings unless they are, in fact, “clearly erroneous.” Mass. R. Civ. R, Rule 52 (c) .[3] “If the trial judge makes one of several possible choices of what facts are supported by the evidence, the judge’s choice is not clearly erroneous.” W. Oliver Tripp Co. v. American Hoechst Corp., 34 Mass. App. Ct. 744, 751 (1993).
We summarize the findings of the judge, supplemented by the undisputed facts on the record. On November 10, 2004, Vega, seventeen years old at the time, was injured in an automobile accident. The vehicle in which Vega was a passenger was uninsured. Vega received medical treatment for those injuries, beginning December 1, 2004, from North Shore, a licensed chiropractic facility. The treatment ended on March 30, 2005, and the fees charged totaled $3,135.00.
At the time of the accident, Vega’s mother, Marta Vega, was insured by Norfolk through the standard Massachusetts automobile insurance policy, which provided additional coverage for her household members. Vega filed a claim with Norfolk for PIP benefits provided under the policy. Norfolk first received notice of the claim after Vega’s treatment had been completed. In a letter to Vega’s attorney dated *182 September 23,2005, Norfolk denied payment, claiming that, after “a thorough investigation and review of this loss,” it had determined that “Vega was not a household member” under his mother’s insurance policy at the time of the accident.
On March 18, 2008, counsel for North Shore sent a certified letter to Norfolk requesting payment of Vega’s outstanding medical expenses. By letter dated March 24, 2008, Norfolk informed North Shore’s counsel that Marta Vega’s policy did not provide PIP coverage for her son. North Shore’s counsel sent another certified letter on March 31,2008, requesting that Norfolk state with specificity the reasons why the PIP benefits were denied. Norfolk responded by letter, on or about April 3,2008, that PIP benefits had been denied because Vega “was not a household member of Marta Vega” at the time of the accident. This prompted North Shore’s counsel to send a certified letter on April 7,2008, informing Norfolk that it had not provided the requested detail as to the basis of its denial of Vega’s claim. Counsel requested that Norfolk specifically state why it thought that Vega, seventeen years old at the time of the accident, did not live with his mother. In response, on or about April 10, 2008, Norfolk replied that North Shore “most certainly did not ask [it] for ‘the specific reason[s] why [Norfolk] believes Vega was not a household member,”’ that Norfolk “hardly could have been more specific” in its response, and that North Shore’s “ever-escalating demands for information have become a game.” On May 2, 2008, North Shore brought a small claims action pursuant to G.L.c. 90, §34M, G.L.c. 93A, and G.L.c. 176D seeking damages of $2,000.00, plus court costs. Over North Shore’s opposition, Norfolk successfully moved to transfer the case from the small claims session to the regular civil docket, and filed its answer on July 25, 2008.
On August 12,2008, Norfolk, prompted by North Shore’s contention that Norfolk had not pleaded with particularity its defense of fraud in its answer, filed a motion to amend its answer subject to opposition procedure.[4] A hearing on the motion was scheduled for August 27, 2008. Neither party appeared at the hearing, the motion was canceled, and Norfolk’s amended answer was never entered on the docket as having been allowed.
Norfolk meanwhile noticed the depositions of Vega and his mother to take place on August 18, 2008. North Shore moved to quash the deposition subpoenas on a number of grounds, including that “there [was] no reasonable likelihood that recovery will exceed $5,000 if North Shore prevails,” Mass. R Civ. R, Rule 30(a) (ii), and that Norfolk had already conducted a “thorough investigation.” North Shore’s *183 motion was denied. On September 9, 2008, Norfolk noticed the deposition of David Keimach, D.C. (“Keimach”), Vega’s treating chiropractor at North Shore. North Shore informed Norfolk that because Keimach no longer lived in the area, he would be unavailable for the deposition. Norfolk then expressed a willingness to conduct Keimach’s deposition by video conference and contended that North Shore had failed to respond to this suggestion. North Shore, in contrast, stated that Norfolk had failed to follow up or seek any relief from the court on the matter.[5]
On September 19,2008, in response to North Shore’s interrogatory regarding witnesses expected to testify at trial on behalf of the defendant, Norfolk stated that “[a] final determination as to witnesses, including expert witnesses, has not been made. Norfolk reserves the right to supplement this answer in accordance with Mass. R. Civ. R, Rule 26.” On October 20, 2008, North Shore, in response to Norfolk’s interrogatories regarding experts expected to testify at trial, listed Keimach. At a case management conference on January 9,2009, the court ordered “all discovery [to] be completed by March 13, 2009,” the date of the pretrial conference.
At the pretrial conference, Norfolk disclosed the names of two fact witnesses expected to testify on its behalf at trial. North Shore orally moved to strike Norfolk’s witnesses’ testimony on the ground that their identities had not been properly disclosed. The court allowed North Shore’s oral motion. Norfolk then, on March 20, 2009, supplemented its answers to North Shore’s interrogatories to include summaries of its two witnesses’ expected trial testimony, and moved the court to reconsider the striking of their testimony. North Shore moved to strike Norfolk’s supplemental answers to interrogatories. The court granted North Shore’s motion to strike, and denied Norfolk’s motion to reconsider. On May 18, 2009, Norfolk filed a petition for interlocutory review of these rulings with the Supreme Judicial Court pursuant to G.L.c. 211, §3. The petition was denied.
1. Norfolk claims that the trial judge’s decision to bar the testimony of its witnesses for nondisclosure was “patently biased and unfair,” and amounted to the denial of Norfolk’s right to a fair trial. Norfolk argues that because it supplemented its answers to interrogatories to include summaries of the trial testimony of its two witnesses almost three months prior to trial, it was an abuse of discretion on the part of the trial judge to strike the discovery responses. Norfolk cites several cases where it was held that it was not an abuse of discretion to allow witnesses first identified less than three months prior to trial to testify. See Porcaro v. O’Rourke, 2008 Mass. App. Div. 218, 222; Procopio Constr. Co. v. DiMarco, 2000 Mass. App. Div. 166, 168; Rubin v. Isakson, 1999 Mass. App. Div. 219, 220.
These cases are inapposite. They do not address the question before this Division: was it an abuse of discretion to deny Norfolk the ability to call its witness *184 es at trial? The standard of review of a trial judge’s discovery sanction is abuse of discretion, a standard applicable both to the judge’s finding that a sanction is warranted in the first place as well as to the appropriateness of the particular sanction itself. Mattoon v. City of Pittsfield, 56 Mass. App. Ct. 124, 131-132 (2002). “[Appellate courts will] not interfere with the judge’s exercise of discretion in the absence of a showing of prejudicial error resulting from an abuse of discretion.” Solimene v. B. Grauel & Co., KG, 399 Mass. 790, 799 (1987).
In its first answers to interrogatories, Norfolk objected to providing the names of any witnesses, including experts, it expected to have testily at trial. Further, Norfolk claimed that “[a] final determination as to witnesses, including expert witnesses, ha[d] not been made.” At a case management conference, the trial judge ordered that all discovery be completed by March 13, 2009. Between the time Norfolk provided its first answers to North Shore’s interrogatories and when discovery closed, Norfolk never supplemented its discovery. At the pretrial conference on March 13, 2009, Norfolk revealed the names and addresses of two fact witnesses it planned to call at trial who would testify to some facts to support Norfolk’s position that Vega was not living at the home of his mother at the time of the accident. There is nothing in the record to suggest what the actual evidence presented at trial would have been. One week later, Norfolk supplemented its interrogatories and named the same witnesses. In this supplemental response, N orfolk stated that one witness would testify that Vega did not live at the residence of Marta Vega, but it failed to articulate a time frame. As to the other witness, it was represented that this witness conducted an investigation in August and September of 2005 as to Vega’s place of domicile and came to a “reasonable and correct” conclusion that he was not living with his mother at the time of the accident in question. However, Norfolk offered nothing as to the exact nature of the investigation or the evidence from which this witness could have drawn this conclusion.
Rule 26(e) (1) of the Mass. R. Civ. R provides that a party has “a duty seasonably to supplement his response with respect to any question directly addressed to ... the identity and location of persons having knowledge of discoverable matters.” “Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.” Strom v. American Honda Motor Co., 423 Mass. 330, 336 (1996), quoting Hickman v. Taylor, 329 U.S. 495, 507 (1947). The trial judge did not abuse his discretion in excluding the testimony of Norfolk’s witnesses at trial. Given the absence of a factual statement in its supplemental answers to interrogatories and the likelihood that Norfolk knew the identities of its excluded witnesses for years, as a “thorough investigation” was conducted in denying the patient’s PIP claim, we cannot discern that the trial court abused its discretion.[6]
*185 2. Next, Norfolk argues that Vega breached the applicable insurance policy contract and Massachusetts law by providing Norfolk with prejudicially late notice of his claim, nine months after the accident, because his failure to report the accident promptly deprived Norfolk of the opportunity to conduct a meaningful “independent medical examination” (“IME”) before he finished his treatment. Pursuant to G.L.c. 90, §34M and the standard Massachusetts automobile insurance policy, the insured is required to submit a PIP claim “as soon as practicable ... and in every case within at least two years from the date of the accident.” G.L.c. 90, §34M. An insurer has a contractual right to “determine promptly — while the evidence and memories are still fresh — the validity of any loss for which it might become liable.” Mello v. Hingham Mut. Fire Ins. Co., 421 Mass. 333, 341 (1995). Where an insurer raises the timeliness of notice, the insurer may disclaim liability only if it can show prejudice. Goodman v. American Cas. Co., 419 Mass. 138, 141-142 (1994). A number of factors are considered in determining whether an insurer has suffered actual prejudice, including the length of delay, the loss of critical evidence, or some other facts showing that the delay caused actual harm to the insurer’s interests. Darcy v. Hartford Ins. Co., 407 Mass. 481, 486 (1990).
The trial judge’s finding that Vega did not breach the insurance policy contract when he provided Norfolk with a delayed notice of his PIP claim is supported by the evidence.[7] Vega’s notice to Norfolk, nine months after the accident, was never given as a basis for Norfolk’s denial of the claim. Further, when it denied Vega’s claim, Norfolk never stated that it had been prejudiced by the late notice. In fact, Norfolk stated it had conducted a “thorough investigation” to determine that Vega “was not a household member of Marta Vega” and, thus, was “not entitled to coverage” under his mother’s insurance policy issued by the defendant. While an insurer does not waive defenses to a claim simply by failing to refer specifically to them in a denial letter, Royal-Globe Ins. Co. v. Craven, 411 Mass. 629, 635 (1992), Norfolk did not assert prejudice as a defense to the claim; therefore, it was not clearly erroneous for the trial judge to find that Norfolk had not been prejudiced by Vega’s delayed notice.
3. Norfolk argues that the trial judge committed an error of law in finding that it committed a wilful and knowing violation of G.L.c. 93A by denying the PIP claim because Norfolk had a valid reason for denying coverage, namely, Vega was not living with his mother at the time of the accident. The trial judge found that Norfolk’s failure to make PIP payments caused North Shore “to incur a financial loss in the form of attorney’s fees and costs.” The purpose of G.L.c. 176D and G.L.c. 93A, as the two statutes are related, is to encourage the settlement of insurance claims and to discourage insurers from forcing claimants into unnecessary litigation to obtain relief when liability is reasonably clear. Hopkins v. Liberty Mut. Ins. Co., 434 Mass. 556, 567-568 (2001). In handling a claim, the insurance company must act generally with “candor and fairness, and expeditiously.” See Trempe v. Aetna Cas. & Sur. Co., *186 20 Mass. App. Ct. 448, 455 (1985). When reviewing a trial judge’s conclusion that particular conduct was or was not unfair or deceptive, for purposes of a claim of unfair or deceptive trade practices, we consider the trial judge’s subsidiary findings of fact under the clearly erroneous standard, while reviewing de novo the trial judge’s ultimate conclusions of law. Zabin v. Picciotto, 73 Mass. App. Ct. 141, 170 (2008). Given that the trial judge did not abuse his discretion in disallowing Norfolk’s two fact witnesses from testifying at trial, which prevented Norfolk from establishing that it had a good faith reason for refusing to make PIP payments allegedly due North Shore, the judge’s finding that Norfolk’s conduct in denying the claim was unfair or deceptive cannot be said to be clearly erroneous. North Shore was forced into expensive litigation after Norfolk had repeatedly failed to act with “candor and fairness” in the handling of the claim. The fact that Norfolk had repeatedly refused to explain with specificity why it believed that Vega did not live with his mother at the time of the accident only bolsters this conclusion.
4. Norfolk also contends that Vega’s noncooperation was its “central defense,” and that the trial judge’s failure to instruct the jury on the defense of noncooperation was an error of law requiring reversal of the jury’s verdict. However, Norfolk fails to describe how North Shore did not cooperate on the claim, other than to note that “when Israel first notified Norfolk of his PIP claim his treatment at North Shore had already ended.”
Section 34M of G.L.C. 90 provides that “[t]he injured person shall submit to physical examinations by physicians selected by the insurer as often as may be reasonably required and shall do all things necessary to enable the insurer to obtain medical reports and other needed information. ... Noncooperation of an injured party shall be a defense to the insurer in any suit for benefits authorized by this section. ...” The cases that Norfolk cites in support of its argument that Vega did not cooperate involve insureds who patently refused to provide certain information to assist the insurer in investigating the claim. At no point did Vega refuse to submit to physical examinations or to provide to the insurer requested medical reports or other information. Norfolk simply never requested any of this information. Further, the fact that Vega waited until after treatment had ended to provide notice to Norfolk of his claim for PIP benefits, while certainly prejudicial in some cases, is not relevant here because, as noted, that was not the reason Norfolk provided for denying the claim. At trial, Norfolk endeavored to show that Vega waited too long to seek medical treatment, that there were gaps in his treatment, and that his late notice of his claim precluded Norfolk from conducting an IME or other review. These arguments are not convincing as Norfolk claimed to have conducted a “thorough investigation,” and yet it denied Vega’s claim not because it seemed unreasonable or unnecessary, but because it believed that Vega did not have coverage because he was not living with his mother at the time of the accident.
5. Norfolk further argues that because North Shore did not introduce the insurance policy at issue in this action, the trial court should have dismissed North Shore’s complaint. We disagree. This case presented a claim for PIP benefits under the standard Massachusetts automobile insurance policy. “[T]he [insurance] policy itself is not the only evidence of the terms, conditions and coverage of the compulsory insurance....” Sonogram of New England, Inc. v. Metropolitan Prop. & Cas. Ins. Co., 2002 Mass. App. Div. 68, 70. In Massachusetts, the standard automobile insur- *187 anee policy is “one prescribed by statute, with standard language controlled by the Division of Insurance.” Id., quoting Jacobs v. United States Fid. & Guar. Co., 417 Mass. 75, 76 (1994). “[O]nce the existence of a Massachusetts automobile policy, in effect on the date of the accident in question, is established, G.L.c. 90, §34M primarily sets forth those terms and conditions of the policy which are relevant to a PIP claim by an injured insured or an unpaid provider.” Id.
The issue here is not whether Marta Yega had coverage, but whether that policy covered Israel Vega. In its answer, Norfolk never stated that Vega’s mother did not have coverage. While North Shore bore the initial burden of proving that the loss for which he seeks compensation is covered within the insurance policy, Highlands Ins. Co. v. Aerovox Inc., 424 Mass. 226, 230 (1997); Metivier v. Liberty Mut. Ins. Co., 1999 Mass. App. Div. 88, 89, the standard of review is whether “anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of [North Shore].” Raunela v. Hertz Corp., 361 Mass. 341, 343 (1972), quoting Kelly v. Railway Express Agency, Inc., 315 Mass. 301, 302 (1943).[8] The record is quite clear that an insurance policy existed at the time of Vega’s accident. At trial, Heather Fitzgibbon (“Fitzgibbon”), an adjuster for Norfolk, testified that at the time of Vega’s accident, an automobile insurance policy with PIP benefits had been issued to Marta Vega by Norfolk. Further, correspondence between North Shore’s counsel and Norfolk makes reference to file and claim numbers related to the insurance policy. Thus, North Shore met its burden of proving the existence of an insurance policy covering Marta Vega (which would have covered Israel Vega if he was living in her household at the time of the accident). The trial court was correct in not dismissing North Shore’s complaint for this reason.
6. Finally, Norfolk makes a general assertion that it was denied a fair trial, citing and reciting a number of alleged grievances. Its first claim, that the trial court precluded Norfolk from introducing testimony of its witnesses on the basis that its disclosure of the witnesses was untimely, is without merit. As stated above, a trial judge has broad discretion in excluding a witness’ testimony, and we have found no error in the exercise of that discretion in this case.
Secondly, Norfolk argues that the trial court improperly allowed, at trial, North Shore’s motion in limine to strike Norfolk’s affirmative defense of fraud. Norfolk does not describe in its brief how it was prejudiced by the allegation of fraud on Vega’s part other than that it received notice of the claim after his treatment had ended. Before trial, Norfolk filed a motion pursuant to Joint Standing Order 1-04 to amend its answer, along with the amended answer and jury demand.[9] A hearing was scheduled on the motion. Neither party appeared at the hearing, and the court did not act upon the motion. Norfolk assumed that the motion had been allowed because it never received notification that it had been denied, while North Shore *188 stated that the clerk’s office of the court had instructed it that the court did not follow Joint Standing Order 1-04 and that a moving party had to appear for the motion hearing. Regardless of whether the court followed the standing order, the trial judge noted that the moving party has the burden of clarifying any error in the docket. The motion was not acted upon, and Joint Standing Order 1-04 states that if no opposition is filed, the court “may” rule on the motion without a hearing. Id §VI(D) (1).
Next, Norfolk claims that the trial judge improperly allowed North Shore to introduce hearsay testimony as well as documents that were not part of North Shore’s G.L.C. 233, §79G submission, and that the court not only did not overrule Norfolk’s objection to the introduction of such evidence, but also refused to allow Norfolk to create a record of the basis for its objection.[10] While part of the trial transcript is marked as inaudible, the record indicates that North Shore introduced a number of documents to establish that Vega lived at the same address where the insurance policy listed his mother as living.[11] North Shore stated on the record that the documents were being introduced pursuant to G.L.C. 233, §79, not G.L.c. 233, §79G.
Although medical records may be admissible under §79G, to be admissible under §79 by the keeper of the records, the records must satisfy a four-part test: (1) the documents must be the type of record contemplated by G.L.c. 233, §79; (2) the information must be relevant to the patient’s treatment or medical history; (3) the information must be recorded from the personal knowledge of the entrant or from a compilation of the personal knowledge of those under a medical obligation to transmit such knowledge; and (4) voluntary statements of third persons appearing in the record are not admissible, unless offered for reasons other than to prove the truth of the matter contained therein or, if offered for their truth, come within another exception to the hearsay rule or the above-mentioned principles. Bouchie v. Murray, 376 Mass. 524, 531 (1978). Because the documents were admitted here for the sole purpose of establishing that Vega’s address was the same as his mother’s address as listed on the insurance policy and that she was the responsible party for the bill, they did not satisfy the four-part test.
However, even if it were error for the trial judge to admit the documents by North Shore’s keeper of the records, we do not find any miscarriage of justice. Norfolk did not properly preserve the error for appellate review. Although counsel objected to the introduction of the documents, he did not clearly direct the court’s attention to the reason for his objection. At the first opportunity, out of the presence of jury, *189 Norfolk could have asserted the reason for his objection. We also note that in Norfolk’s direct examination of Fitzgibbon, Norfolk brought before the jury evidence that it had conducted a full investigation and determined that Vega did not live with his mother at the time of the accident. Although North Shore objected to this testimony, which the court sustained, and Norfolk was not able to explain fully why its investigation had led it to this belief, North Shore never moved to strike the response of the claims adjuster. Thus, the jury had before it, in essence, evidence that Vega did live with his mother at the time of the accident from the documents introduced by North Shore as well as evidence that Vega did not live in the household from the testimony of Norfolk’s claims adjuster. As Norfolk did not properly preserve the issue, the asserted error is deemed waived.
Additionally, Norfolk claims that the court refused to instruct the jury about the effect of Vega’s alleged noncooperation with Norfolk regarding his claim for PIP benefits. As stated above, it was not clearly erroneous for the judge to refuse to do so, especially given Norfolk’s original explanation for its denial of Vega’s claim.
Finally, Norfolk contends that the trial judge revealed his prejudice toward Norfolk in certain, possibly sarcastic, statements he made before and during trial regarding insurance companies. However, any comments made by the trial judge out of presence of the jury, either at sidebar, during bench conference, or during posttrial hearings, did not result in fatal prejudice for the very reason that they were made outside the presence of the jury, City of Boston v. United States Gypsum Co., 37 Mass. App. Ct. 253, 257 (1994), and did not result in the denial of a fair trial to Norfolk.
There being no error of law, the trial court’s judgment is affirmed.
So ordered.

 In its notice of appeal and appellate brief, Norfolk alleges a number of additional reversible errors of law, including allowing North Shore to introduce medical records into evidence not certified pursuant to G.L.c. 233, §79G, striking Norfolk’s affirmative defense of fraud, and failing to grant Norfolk’s motions for directed verdict. However, Norfolk addresses these issues in its argument that it was denied a fair trial.

 “Findings and conclusions prepared ex post facto by counsel, even though signed by the judge,” are generally disfavored. Cormier v. Carty, 381 Mass. 234, 236-237 (1980), quoting Roberts v. Ross, 344 F.2d 747, 751-752 (3d Cir. 1965). “[Fjindings which fail to evidence a ‘badge of personal analysis’ by the trial judge must be subjected to stricter scrutiny by an appellate court.... [T]he greater the extent to which the court’s eventual decision reflects no independent work on its part, the more careful we are obliged to be in our review.” Id at 237, quoting In re Las Colmas, Inc., 426 F.2d 1005, 1010 (1st Cir. 1970). The standard of review does not change if a judge has adopted a party’s proposed findings verbatim. We review those findings under the clearly erroneous standard, but they are subjected to stricter scrutiny. Adoption of Hank, 52 Mass. App. Ct. 689, 693 (2001).

 A finding is “clearly erroneous” when there is no evidence to support it, or when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. Guardianship of Clyde, 44 Mass. App. Ct. 767, 774 (1998).

 Pursuant to Joint Standing Order 1-04 regarding opposition procedure in motion practice, “motions may be acted upon by the court without a hearing in the following manner”: where “any other party opposes the motion or otherwise seeks to be heard, such party shall file and serve a document captioned ‘OPPOSITION TO MOTION’ at least five days before the motion hearing date. If any party timely files and serves such a[] [motion], all counsel shall be required to attend the scheduled hearing, unless in such [motion] the party expressly waives the right to such hearing, in which case the motion will be considered by the court without a hearing or the attendance of any counsel.” Id §VI(D) (2). Further, “[w]hen a motion is considered under the opposition procedure, the court shall act upon, and send written notice of such action to all parties, within 14 days after the hearing date.” Id. §VI (D)(4).

 Later, after both parties’ motions for summary judgment had been denied, Norfolk asked counsel for North Shore to provide dates on which Keimach would be available for a video deposition. North Shore responded by letter that pursuant to Mass. R. Civ. R, Rule 30(a), “leave of court... must be obtained [for a deposition] if there is no reasonable likelihood that recovery will exceed $5,000 if North Shore prevails,” and that it would await a court order before allowing Keimach to be deposed.

 Norfolk also claims that the witnesses excluded at trial were rebuttal witnesses, whose testimony would directly refute the evidence of North Shore, and, as a matter of right, it should have been allowed to present their testimony. A trial judge has substantial discretion to permit the presentation of rebuttal evidence. Drake v. Goodman, 386 Mass. 88, 92 (1982). Only when a party seeks to present evidence to refute direct evidence of the other side may it do so as a matter of right. Id. North Shore never introduced evidence specifically establishing that Vega did indeed reside with his mother. Therefore, Norfolk was not entitled as of right to present this evidence.

 In fact, the judge found that Norfolk itself had breached the cooperation clause of the standard Massachusetts automobile insurance policy when it failed to state its reasons with specificity for denying North Shore’s claim prior to litigation, though it had been properly asked. North Shore had requested detailed information as to why Norfolk thought Vega was not a household member.

 Thus, dismissal of the claim for failure to introduce the insurance policy is not always required if its existence can be established. Sonogram of New England, Inc., supra at 70.

 In its original answer, Norfolk failed to plead with particularity its affirmative defense of Vega’s alleged fraud.

 While we address this issue, it is worth noting that Norfolk devotes only four sentences in its brief to this argument.

 The first document was given to the patient by North Shore to fill out when he began his treatment and contained information regarding the patient’s name, his address, the party responsible for the bill, as well as the responsible party’s address. The second document was a computer-generated form mirroring the information the patient had provided in the first document, plus the date of his injury. The third document was a bill for services rendered to the patient, which included the address of the patient’s mother. The fourth document was a doctor’s lien, signed by the patient’s mother. The last document authorized payment and release of information to the insurance company, also signed by the patient’s mother.