Greco, J.
This is an action be the owner of commercial premises against a former tenant to recover rent adjustments for a five year period. After trial, judgment was entered for the plaintiff on both her claim for the $22,100.00 in adjustments and the defendants counterclaim. This Dist/Mun. Cts. R A. D. A, Rule 8C, appeal by the defendants is based on the denial of several of their requests for rulings of law.
The facts in the case concerning rent payments were not disputed in any significant way. The parties[2] first entered into a written commercial lease for five years, beginning October 1,1986 and ending September 30,1991, with an option given the lessee to extend the lease for an additional five year period. A monthly rent was set subject to adjustments for any increase in real estate taxes, operating expenses or the cost of living (as reflected in the Consumer Price Index). The lease further provided that any adjustments for taxes or operating costs were due “when and as designated by notice in writing by” the plaintiff-lessor. The lease was silent as to when such notice would be given. There was no notice provision concerning the “Consumer Price Escalation,” the lease providing only that the rent would be adjusted on a yearly basis.
Dining the original five year term of the lease, the above rent adjustments totaled over $14,700.00, for which the tenant was billed at the end of that period. When the tenant exercised his option to extend the lease for another five years (Le., until September 30,1996), he added an extra $100.00 to the rent he paid each *180 month in order to avoid such a large lump sum payment at the end of the second term. On September 19, 1996, the plaintiff notified the defendant that he owed over $22,000.00 in additional rent under the rent adjustment provisions of the lease (even after credit was given for the extra $100.00 monthly payments). Following tiie expiration of the second five year period, the parties discussed whether the lease would be renewed further. On December 18,1996, however, the defendant notified the plaintiff that he did not wish to renew. The plaintiff sent the defendant a notice to quit soon thereafter. After staying on for a few months, the defendant finally vacated the premises in the spring of 1997.
The circumstances under which the parties ended their relationship were the subject of the defendants’ counterclaim. The lease provided that the lessor had to consent to any assignment; that if the lessee wanted to assign the lease, he had to make a written request to the lessor to do so; and that the lessor could not unreasonably withhold such consent The tenant contended at trial that sometime after the second five year term ended, he asked the plaintiff to assent to the assignment of the lease to the operator of a nearby Thai restaurant who then would have bought the tenant’s equipment thereby allowing the tenant to use the proceeds of that sale to pay the rental amounts due. However, the tenant also contended that the plaintiff refused to consent to the assignment because of the prospective assignee’s race and/or national origin. Based upon these allegations, the tenant counterclaimed for intentional interference with a contract[3]
This appeal is based on the trial judge’s denial of seven rulings of law requested by the defendants. In all seven instances, the request was denied with the somewhat ambiguous notation: “Denied as not supported by the evidence.” Although a more explicit formulation would have been desirable, we take this notation to be synonymous with a determination that the requested ruling was inapplicable or immaterial to the case based on the facts found. See Jacquith v. Morrill, 204 Mass. 181, 188 (1910); Fillion v. Cardinal, 2000 Mass. App. Div. 284, 286. While the judge in this case did not make written findings of fact, her general findings for the plaintiff on her claim and on the defendants’ counterclaim “import a determination of the subsidiary facts required to support [them ].” Barnett v. Roberts, 243 Mass. 233, 235 (1922).
The seven requests for ridings of law at issue on this appeal can be roughly divided into two categories: the first four were clearly meant to suggest the law applicable to the notice which the plaintiff was required to give of any rent adjustments; the remaining three appear to relate solely to the tenants counterclaim. As to the first category, two of the requested rulings were properly denied as not being correct principles of law in ail situations. Rather, their applicability would depend on the facts of any given case. Request number 3 sought a ruling that an ambiguous term in a contract “should be construed against the moving party.” While that rule of construction may apply in many situations, it “must give way to the primary and inflexible rule that... contracts are to be construed so as to ascertain ... the true intention of the parties.” Shea v. Bay State Gas Co., 383 Mass. 218, 225 (1981). See also Hubert v. Melrose-Wakefield Hospital Association, 40 Mass. App. Ct. 172, 177 (1996). Similarly, whether “[a] party’s failure to give reasonable notice... violates the implied covenant of good faith and fair dealing,” as suggested in request number 6, would be a question of fact for the judge to determine at trial. See Cherick Distributors, Inc. v. Polar Corp., 41 Mass. App. Ct. 125, 127 (1996). Thus it was appropriate for the judge to deny these requests once she found that the facts rendered them inapplicable.
*181 The denials of requests number 2 and 7 appear more problematic at first glance because the requests set out correct statements of law, seemingly of general application. As stated in these requests and as this Division noted in Moda v. Terminex Internat’l Co., 1999 Mass. App. Div. 264, 266, there may be “no surer way to find out what the parties meant than to see what they have done,” Pittsfield & N. Adams R.R. v. Boston & Albany R.R., 260 Mass. 390, 398 (1927), and “when an essential term of a contract is missing, that contract is ambiguous and it falls to [the court] to interpret the contract sensibly in the light of the document taken as a whole... and surrounding facts.” Fay, Spofford & Thorndike, Inc. v. Massachusetts Port Auth., 7 Mass. App. Ct. 336, 342 (1979). The undisputed facts in this case, however, also rendered these requests inapplicable. This is not a situation where the lessee was contending he could not be evicted because the rent, as adjusted, had not yet become due in the absence of the required notice. Possession was not an issue at this trial which took place approximately three years after the tenant vacated the premises. Notice was in fact ultimately given — reasonable or otherwise. The tenant is not claiming that the statute of limitations barred this suit, which was filed less than six years after the lease was renewed. Rather, he is claiming that the delay in notice wiped out his obligation to pay the additional rent. As such, this claim is akin to a defense of laches which, however, “is not generally available as a defense to a legal claim. As long as there is no statute of limitations problem, unreasonable delay in pressing a legal claim does not, as a matter of substantive law, constitute laches.” Srebnick v. Lo-Law Transit Management, Inc., 29 Mass. App. Ct. 45, 49-50 (1990). Moreover, for this defense to exist the delay must be not only unreasonable, but also prejudicial. No evidence of prejudice was presented in this case. In these circumstances, there was no error in the denial of defendants’ requests numbers 2 and 7.
The remaining three requested rulings of law which form the basis of this appeal address the law applicable to the tort of intentional interference with a contract Leaving aside the question of whether the defendants could invoke the anti-discrimination provisions of G.L.c. 151B, the requests were correct statements of law inapplicable to the undisputed facts which clearly showed that no counterclaim for intentional interference would lie. To make out a claim for interference with a contract the defendants (as plaintiffs-in-counterclaim) would have had to present evidence that among other things, the plaintiff intentionally and maliciously interfered with the tenants contemplated contract with the owner of the Thai restaurant See Comey v. Hill, 387 Mass. 11, 19 (1982). This implies some intervention or intrusion into the arrangement between these two people. Here, however, there was no evidence that the plaintiff took any overt action, but only that she simply refused to assent to an assignment of the lease. Arguably, there might be the requisite interference where a party failed to act when he had a legal obligation to act — in this context, where, for example, a lessor unreasonably withheld his assent to an assignment when the lease obligated him to be reasonable. See Halper v. Demeter, 34 Mass. App. Ct. 299, 306 (1993). The hitch in this case is that any such obligation no longer existed. The lease period had expired; the tenant, at best a tenant at sufferance, had nothing to assign. With the assignment provision no longer in play, the plaintiffs mere unwillingness to take on this new lessee could not legally have risen to the level of tortious interference. Accordingly, in these circumstances there was no error in the trial courts denial of the final three requests for rulings. The trial courts judgment is affirmed. Appeal dismissed.
So ordered.

 Defendant Anestis Tzokos executed the commercial lease with the plaintiff so that her son-in-law, defendant Kyriakos (a/k/a Charlie) Kazakides, could operate a restaurant on the premises. Charlie and his wife, defendant Sofia Tzokos, signed the lease as guarantors. At all relevant times, however, the plaintiff-landlord dealt exclusively with Charlie Kazakides, who paid the rent and other bills, obtained licenses, communicated with the landlord regarding repairs etc. He is referred to in the defendants’ brief as the tenant and, for convenience, we do so herein.

 The defendant-appellants have not included a copy of the counterclaim in either the record appendix or their brief The plaintiff-lessor did not file a brief with this Division.