Coven, J.
The issue on this appeal is whether it is an unfair business practice for an immigration attorney to charge a fee for services when the sole objective of his client, an illegal alien, in securing those legal services was to obtain a residency status that was unambiguously foreclosed by law.
We begin with an overview of immigration law relevant to this appeal. An alien may apply for permanent residency, a so-called green card, based on an offer of employment. 8 U.S.C. §1153 (b). This employment-based legalization is a three-step process. First, the United States Department of Labor must authorize an employer to hire an alien for a particular job. 8 U.S.C. §1153 (b)(3)(C). Second, a petition known as an 1-140 must be filed by the employer. The final step involves the adjustment of the status of the particular alien. 8 U.S.C. §1154(b). However, subject to certain exceptions not relevant here, an alien who is unlawfully present in the United States, or who accepts unauthorized employment, may not apply for a status adjustment through an employment-based process. 8 U.S.C. §1255 (c) (2). An alien admitted to the United States for a limited period becomes unlawfully present if that individual remains in the United States beyond the authorized period of stay. 8 U.S.C. §1227 (a) (1) (C) (i). An alien who is unlawfully present but becomes the beneficiary of an approved 1-140 petition could leave the United States and apply for an immigration visa at a United States consulate abroad, 8 U.S.C. §1202 (b); but an alien unlaw *97 fully present in the United States for more than one year faces a ten-year bar to lawful reentry. 8 U.S.C. §1182 (a) (9) (B) (i) (11).
A provision of the Immigration & Nationality Act known as “Section 245(i)” had once allowed an alien who was unlawfully present, or employed without authorization, to apply for an adjustment of status if the alien had initiated an employment-based application for a green card on or before April 30, 2001. 8 U.S.C. §1255(i) (1) (B). This provision expired in 1998, but was extended by Congress, after its expiration, to April 30,2001.
We now turn to the trial judge’s findings.[1] In February of 1998, Alcibey A Soares (“Soares”), a Brazilian national who speaks Portuguese, entered the United States on a tourist visa that allowed him to remain in the United States for not more than six months. Soares remained in the United States past the expiration of the authorized period. On December 1, 2001, almost three years after entering the United States and two and one-half years after the expiration of his visa, Soares sought a consultation with the defendant, Law Offices of Martin C. Liu & Associates. Attorney Martin C. Liu (“Liu”) established his law firm in 1987 and practiced exclusively in immigration. He maintains law offices in Newark, New Jersey, New York City, and Cambridge, Massachusetts.
December 1, 2001 fell on a Saturday; and that was the day of the week that Liu held consultations at his Cambridge office. Soares was one of a group of prospective clients waiting to consult with Liu. As was his custom, Liu gave a “mini lecture” to the group to acquaint them with what would occur in their individual consultations and to inform them of the requisites for adjusting their status in the United States. Soares’ consultation lasted approximately twenty minutes.
Liu, who was raised in Brazil and speaks fluent Portuguese, spoke to Soares in Portuguese. Soares, employed as a painter at the time, informed Liu that he had overstayed his tourist visa and was unlawfully in the United States. Liu placed a retainer agreement before Soares. The agreement, which Liu read to Soares, and which, with one exception, was drafted in English,[2] contained the following:
If you have been unlawfully present in the United States after April 1, 1997 for more than 180 days or for more than one (1) year and then depart from the United States, then you may be subject to a three (3) year or ten (10) year bar, respectively, before you may re-enter. These possibilities may be waived if you are a spouse or child of a United States Citizen or *98 Lawful Permanent Resident. Furthermore, if Section 245 (i). is reinstated, you would be allowed to adjust status in the United States without departing from the U.S.
This language was in small print at the bottom of the agreement.
The trial judge further found that Liu explained to Soares that if he were to leave the United States, he would face a ten-year bar to lawful reentry. Liu explained that the existing law would not permit Soares to adjust his status to lawful permanent residency based upon an offer of employment, but represented that the law would change[3] to Soares’ benefit. After these discussions and a discussion concerning the retainer, Liu added the following to the retainer agreement: “3rd preference/ skilled labor/adjustment of status.”
Soares paid Liu $2,000.00 at the initial consultation. Soares then paid $2,000.00 for Liu’s filing of an Application for Alien Labor Certificate on behalf of Soares on December 27,2001, and an additional $2,000.00 upon approval of the application. Liu also filed an 1-140 Immigrant Visa Petition on behalf of Soares’ employer in October of 2004. It was approved the following month.
The trial judge found that Liu believed that Soares was familiar with the process of seeking lawful permanent residency, from which we may infer that Liu knew that achieving this status was Soares’ goal. In any event, Liu met with Soares ten times between December 1,2001 and September 22, 2005.
In September, 2003, Soares requested a letter from Liu indicating what progress had been made in his case. The trial judge found that Soares requested the letter in case “questions were raised by legal authorities.” Liu provided a letter, addressed to “Whom It May Concern,” in which Liu asserted that he had “taken all the appropriate steps to process [Soares’] documents for permanent residency status based upon a filed Labor Certificate Application.” Liu further asserted in the letter that he was “confident” that Soares would receive his permanent residency status “shortly.” A similar letter was issued in September of 2005.[4] When drafting the 2003 letter, Liu was aware of congressional efforts to reactivate §245 (i); and, at the time the 2005 letter was written, Liu believed that it was likely that there would be immigration reform that would permit Soares to petition for permanent lawful residency.
Ultimately, the trial judge found that Liu did not misrepresent to Soares any material aspect of the legal services that Liu could, or would, provide and did not intend to mislead Soares in any respect. A finding was also made that Soares did not rely on any purported misrepresentations by Liu.
The trial judge found for Soares on his claims of breach of contract and unjust *99 enrichment, and awarded $6,950.00 in damages on each complaint count. But the judge recognized, appropriately, that the damages awarded were duplicative. Finding that Liu’s actions constituted a knowing and wilful violation of G.L.c. 93A, the judge awarded double damages. Judgment was entered in the amount of $13,180.00. Counts for money had and received, fraud, and negligence were dismissed on Liu’s motion.[5]
An appellate court may sustain a trial court ruling even if the trial court did not articulate the reasoning for its ruling. See Aetna Cas. & Sur. Co. v. Continental Cas. Co., 413 Mass. 730, 734 (1992). We address first the court’s ruling in this case that Liu’s conduct violated G.L.c. 93A. Four principles are relevant. The first is that “[a] ruling that conduct violates G.L.c. 93A is a legal, not a factual, determination.” R.W. Granger & Sons, Inc. v. J & S Insulation, Inc., 435 Mass. 66, 73 (2001). Second, “the boundaries of what may qualify for consideration as a [G.L.c.] 93A violation is [also] a question of law.” Id., quoting Schwanbeck v. Federal-Mogul Corp., 31 Mass. App. Ct. 390, 414 (1991), S.C., 412 Mass. 703 (1992). Third, the range of acts that potentially may be unfair or deceptive is broad and exceeds the boundaries of tort and contract claims. Green v. Blue Cross & Blue Shield of Mass., Inc., 47 Mass. App. Ct. 443, 448 (1999). Finally, a practice may be deemed unfair in violation of G.L.c. 93A if “it is immoral, unethical, oppressive, or unscrupulous.” PMP Assocs., Inc. v. Globe Newspaper Co., 366 Mass. 593, 596 (1975).
It is undisputed that Soares could not legally obtain a change in his status of being unlawfully present in the United States. And we find fully warranted the conclusion that Soares sought an adjustment of that status without returning to Brazil.[6] Therefore, we address the question whether an immigration attorney may undertake to represent an alien in obtaining a status that is prohibited, where the trial judge specifically finds that was the only benefit sought by the client.
In an attorney-client relationship, the attorney has a professional duty not to advance a claim that cannot as a matter of clearly stated law be achieved. This precept is statutorily grounded and embodied in the professional rules governing attorney conduct. See G.L. c. 221, §38 (Massachusetts attorney’s oath: “I will not witting *100 ly or willingly promote or sue any... groundless... suit_”); Mass. R. Prof. C. 3.1 (“A lawyer shall not bring or defend a proceeding ... unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification, or reversal of existing law.”). This is not to say that an attorney may not counsel a client that the expectation cannot be realized because of a legal prohibition, or continue to advise the client on legal changes.[7] Indeed, this is the very nature of the attorney-client relationship. But beyond this counseling, for which legal fees may be charged, it is a violation of the relationship, i.e., unethical, to advance through legal process prohibited positions. Where a client seeks an outcome that cannot be achieved because of a clear and certain legal impediment, an attorney may counsel that client on the legal impediment. It is an unfair business practice, however, to accept further money to advance through legal process a position that cannot be achieved. To do otherwise, at that point, would eviscerate the fiduciary duty owed to the client and, in its stead, place the business interests of the attorney as the criterion for continued representation.[8]
There is no merit in Liu’s argument that the court’s findings that Liu did not make any misrepresentation and that Soares did not rely on any misrepresentation are inconsistent with the court’s determination that Liu violated G.L.c. 93A. Regardless of the accuracy of Liu’s communications to Soares regarding the scope of work to be performed or the issue of Soares’ reliance, it is the substitution of the business interest over the duty owed to the client that forms the basis of recovery.
We also find a basis in the record for an award of damages on Soares’ claim for unjust enrichment. Unjust enrichment is equitable in nature and has long been recognized. See Douillette v. Parmenter, 335 Mass. 305, 307 (1957). In the context of a fiduciary relationship, “[a] court has the power to grant equitable relief when there has been a violation of fiduciary duty... to avoid unjust enrichment of the fiduciary at the expense of a beneficiary.” Demoulas v. Demoulas, 428 Mass. 555, 580-581 (1998). And the equitable relief available includes restitution. Demoulas v. Demoulas Super Mkts., Inc., 424 Mass. 501, 556 (1997). Having affirmed the judge’s implicit conclusion that Liu breached his fiduciary duty, we conclude that Soares’s claim for *101 unjust enrichment was properly allowed.[9]
Judgment affirmed.
So ordered.

 The trial judge’s findings are based on his dispositions of the defendant’s requests for findings. The trial judge allowed requests, denied requests, and added comment to others. Following the abolition of Mass. R. Civ. R, Rule 64A, atrial judge sitting as the finder of fact should make independent findings. See Mass. R. Civ. R, Rule 52(c). Unlike the practice that existed under former Rule 64A, a judge acting pursuant to Rule 52(c) does not rule on each request. See B. Thomas Heinzer Assocs., Inc. v. Xarras, 2010 Mass. App. Div. 218, 219.

 At the top right of the agreement, the following words appear: “Anuncio no Jornal.” According to the trial testimony, this is Portuguese and translates as “newspaper advertisement.”

 Liu suggests that the trial judge erred in not finding that Liu represented to Soares that there exists a “good chance” that the law would change. Whether the representation was that it “would” change or there was a “good chance” of change is immaterial to this decision.

 Instead of reference being made to the Labor Certificate Application, the 2005 letter referred to an “Approved Immigrant Petition for Alien Worker.” And instead of the term “shortly,” the letter referenced the “near future.”

 Soares’ complaint has not been made part of the record. It is the duty of the appealing party to provide this Division with a record sufficient to permit our review and disposition of the issues raised. In this case, Liu claims that the judge erred in concluding that Soares proved his unfair practices claim because the court dismissed Soares’ underlying fraud and negligence claims and that Soares’ G.L.c. 93A claim was dependent on the allegation of fraud. In the absence of the complaint, what Soares alleged as a basis for this claim is unknown. We address this finding in the context of whether the evidence supports the conclusion reached by the trial judge.

 Liu testified that it was not the objective to have Soares return to Brazil to complete the process because of the length of time Soares would be barred from reentry into the United States.

 See also Mass. R. Prof. C. 1.4(b) (“A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.”).

 The trial judge declined to make a requested finding that the work performed for Soares was done in the context of providing Soares with some future advantage, that is, that Soares “would be advanced in line substantially for the process of a petition for adjustment of status, provided that” §245© was reinstated. Liu did testify that had Soares waited for the reinstatement before taking any action, it would have taken five to six years to reach the point where Soares was in the process. The trial judge was also presented with evidence that Liu in his deposition was asked: “And what exactly is the value? How is Soares any better off today than he was on December 1, 2001?” Liu answered, “I can’t speak to that.” Liu also testified that he could not “speak to [Soares’] belief’ on what he had obtained, if anything, by Liu’s representation. The trial judge was not bound to credit the assertion that the work performed accomplished some future utilitarian purpose or was assented to with knowledge that it would serve a future purpose. We do not decide whether, had the trial judge found otherwise, the result we reach would have been different.

 Having found a basis for the recovery of money paid by Soares and the G.L.c. 93A violation, we need not address Liu’s claim that the trial judge improperly found a breach of contract. We do agree, however, with the assertion of both parties that a breach of the covenant of good faith and fair dealing applies to the performance, not the formation, of the contract. See Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 412 F.3d. 215, 230 (1st Cir. 2005), citing Levenson v. L.M.I. Realty Corp., 31 Mass. App. Ct. 127, 131 (1991).