Greco, PJ.
The plaintiff, Evaldo M. Cardoso (“Cardoso”), has appealed the finding for the defendant after a jury-waived trial. Cardoso alleges that he hired Attorney Martin C. Liu (“Liu”) in relation to his efforts to become a lawful permanent resident of the United States (i.e., to obtain a “green card”); that he agreed to pay Liu $8,000.00 for his services, of which $6,735.00 was paid; and that he is entitled to a refund of those payments since a green card was not obtained. Cardoso also sought damages pursuant to G.L.c. 93A, §9. In his notice of appeal, Cardoso alleges error in twelve specific findings of fact by the trial judge. The sole question of law is the contention that the trial court “erred in its interpretation of what acts rise to the level of a violation of G.L.c. 93A”[1] In his brief, Cardoso states the issues on appeal to be: 1) whether the trial judge “was required, as a matter of law, to find that the defendant promised... that it would obtain adjustment of [the plaintiffs] immigration status to lawful permanent residency”; 2) whether that promise was unambiguously made in the written agreement between the parties, and if not unambiguously made, “whether the judge properly applied rules of construction for ambiguous contracts”; 3) whether any finding that such a promise was made was in error as a matter of law; and 4) whether the trial court “misunderstood immigration law when it found that the [p]laintiff still has a viable immigration process in place.”
After the trial, the judge made written findings that Cardoso, whose native language is Portuguese, came to the United States in May of 2000 on a tourist visa that he knew enabled him to stay in this country for only six months. In Brazil, he had worked as a butcher and also owned a business. A few months after arriving in the U.S., he began working again as a butcher. In June of 2002, over a year after his visa had expired, Cardoso began consultation with Liu, a lawyer whose practice was exclusively in immigration law. Liu “was raised in Brazil and speaks fluent Portuguese.” Liu “advised” Cardoso “that he had to remain gainfully employed so *103 that his employer could sponsor him” for permanent residency.
On June 22, 2002, the parties entered into a “Retainer Agreement”[2] whereby Cardoso retained Liu “to represent” him “in obtaining” three items that were handwritten in a space provided in the agreement These items were listed as “3th preference/ Skilled Labor/ Adjustment of Status.” The agreement then provided that the fee for these services would total $8,000.00, plus various costs, but not including “the cost of any appeal.” Of this amount, $2,000.00 was to be paid “upon execution” of the agreement, $2,000.00 “[ujpon filing application for Labor Certification,” $2,000.00 upon the approval of that certification, and the final $2,000.00 upon “receipt of appointment of 245 hearing/immigrant visa appointment.” The trial judge found that Liu “explained in detail each aspect of the Agreement in Portuguese,” and that he also brought to Cardoso’s attention a printed disclaimer appearing at the bottom of the agreement that indicated that a person unlawfully in the United States after April 1,1997 for more than six months who then leaves this country may face a three or ten-year bar before reentering.
The trial judge also found the following. Liu “fully explained” to Cardoso that the law then in effect did not allow him, while he was within the country, to adjust his status to lawful permanent residence “based upon an offer of employment, but that the process for that goal could be commenced.” Liu also told Cardoso that “[gjiven the political climate at the time,” he believed there was “a possibility” that §245 (i), i.e., the provision in the immigration law that had previously allowed the status adjustment, would be reactivated, and that “it made sense to start the process prior to reactivation of section 245 (i),” in that if a labor certification and an immigration visa were obtained, “the application process would be in an advanced state when and if [Cardoso] became eligible to make the final application.” During 2003 and 2004, Liu contacted Cardoso’s employer in an effort to get the financial information necessary for a visa application. Without getting that information, Liu filed a petition for an immigration visa on behalf of Cardoso on May 16, 2006. The employer, however, did not supply the necessary documentation until October 17, 2006, which was “ten days past [the] required submission date.” When Liu submitted the information late, the petition was denied for failure to submit the information in a timely manner. Finally, the trial judge found that Cardoso had quit his job in January of 2007 with *104 out consulting Liu; and that Liu was thereafter unable to make contact with either Cardoso, or his former employer. At the close of her findings of fact, the trial judge stated:
The Plaintiff never complained to the Defendant about any aspect of his legal work or fees until he sent a demand letter pursuant to G.L.c. 93A in August 2008. There exists a labor certification and priority date approved under the Plaintiffs name which could be used by him to advance the immigration process. The Defendant responded to the demand letter.
The Plaintiff understood the terms, conditions, uncertainties and stages of the Agreement and by signing it accepted the risks attendant thereto. The Defendant diligently pursued the accomplishment of the stages promised.
In making these findings, the trial judge chose, on the critical issues, to credit the testimony of Liu over that of Cardoso. For example, Cardoso testified that Liu “guaranteed [him] that while [he] had a boss that would sponsor [him, he] would be able to file for a green card”; that he would “first... receive a Social Security card, then the green card, and that [he] would become a resident.” Cardoso also testified that at their first meeting, Liu told him if his boss “signed for” him, he “would be eligible by the 245 (i) .’’On the other hand, Liu testified that he “explained the different steps, ... pointed exactly to where the issue would arise if 245 (i) was not to be reactivated,” and that “we would have to wait for a penalty fee to be instituted,” thereby explaining why 245 (i) was written on the retainer agreement followed by a question mark.
The main issue in this case, however, centers more on whether Liu unambiguously promised to obtain a green card for Cardoso, and, if he did, whether Cardoso is entitled to a refund of the fees he paid since Liu did not fulfill that obligation. We agree with Cardoso that the Retainer Agreement was not ambiguous, but not in the way Cardoso construes it. Liu agreed to represent Cardoso “in obtaining” an “Adjustment of Status.” Liu did so. Liu was not, however, promising success in that effort. In fact, the agreement expressly provided that the agreed fee of $8,000.00 would not cover any fees attendant to an appeal, thus recognizing the possibility that such adjustment might not be successfully obtained. The agreement here was straightforward; it required Cardoso to pay Liu as certain items were accomplished. Cardoso has not paid the total amount due because the last step in the process was not accomplished. As the trial judge found, Cardoso was made aware that the final step could not be accomplished without a change in the law. Liu advised him of the benefit of keeping the process going and of his view as to why the law might change. Cardoso made the decision to go forward. Thus, the obtaining of a green card was not a condition precedent that had to take place before Cardoso was obligated to make any payment. See Massachusetts Mun. Wholesale Elec. Co. v. Danvers, 411 Mass. 39, 45 (1991) (“A condition precedent defines an event which must occur before a contract becomes effective or before an obligation to perform arises under the contract. If the condition is not fulfilled, the contract, or the obligations attached to the condition, may not be enforced” [citations omitted]). As certain events happened, Cardoso was required to make payments; an appointment for a visa not having been obtained, Cardoso never became obligated to make the final payment of $2,000.00.
*105 In the alternative, Cardoso argues that if the Retainer Agreement is deemed ambiguous, the trial judge was required to construe it against its drafter, here Liu.[3] That principle, as noted by the appellant, “surely counts double when the drafter is a lawyer writing on his or her own account to a client [since] [i]n setting fees, lawyers are fiduciaries who owe their clients greater duties than are owed under the general law of contracts. Beatty v. NP Corp., 31 Mass. App. Ct. [606], 612 [(1991)], quoting from RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS §46, comment b (Tent. Draft No. 4, 1991).” Garnick & Scudder, P.C. v. Dolinsky, 45 Mass. App. Ct. 925, 926 (1998). However, “[w]hile that rule of construction may apply in many situations, it ‘must give way to the primary and inflexible rule that... contracts are to be construed so as to ascertain ... the true intention the parties.” DeLorenzo v. Tzokos, 2001 Mass. App. Div. 179, 180, quoting Shea v. Bay State Gas Co., 383 Mass. 218, 225 (1981). Moreover, “[w]hen a written agreement, as applied to the subject matter, ‘is in any respect uncertain or equivocal in meaning, all the circumstances of the parties leading up to its execution may be shown for the purpose of elucidating but not of contradicting or changing its terms,’” Hubert v. Melrose-Wakefield Hosp. Ass’n, 40 Mass. App. Ct. 172, 177 (1996), quoting Robert Indus., Inc. v. Spence, 362 Mass. 751, 753-754 (1973). In this case, the trial judge displayed an understanding of the applicable immigration law and was warranted in finding that Cardoso knew that his obligation to pay was not conditioned on ultimate success in obtaining a “green card,” and that he would not obtain that result unless the law changed.
Finally, Cardoso argues that it was error to allow Liu to explain the bases for believing that the immigration law might change. Liu testified that there were “efforts... not only initiated in [C]ongress, but also the White House was involved in a number of initiatives to reinstate 245©”; that §245© had been a “great success”; and that “there was a lot of support for this program to be reenacted again.” This issue was not, however, set out in his notice of appeal or in his statement of the issues in his brief. Moreover, there was no objection to the above testimony at the trial. The sole objection was to Liu’s additional testimony that §245© came close to being approved in 2002 when Congress was considering “batching it together with the appropriations bill.” Accordingly, we do not consider this evidentiary issue. See Adoption of Kimberly, 414 Mass. 526, 535 (1993). In any event, the evidence, while not admissible for its truth, may well have been properly admitted to explain Liu’s state of mind as to any hope for a change in the immigration law.
In reaching this decision, we are mindful that we have almost contemporaneously issued opinions reaching different results in two cases involving the same defendant, similar legal issues and facts (including the same fee agreement), with the parties represented by the same lawyers and in the same court house, but tried before two different trial judges, one finding for the defendant and the other for the plaintiff. See Soares v. Law Offices of Martin C. Liu & Assocs., 2011 Mass. App. Div. 96, *106 ante. However, evidence in any given case may produce one outcome or another depending on how it is presented and challenged, and how it is perceived and weighed by the finder of fact.[4] Nuance and credibility play no small part in divergent outcomes, and credibility is for the fact finder to resolve. See, e.g., Commonwealth v. Hoffer, 375 Mass. 369, 377 (1978). Whether Soares was found more believable than Liu by one judge or Cordoso less so by another is not for us to speculate. Our role is strictly limited. “An appellate court will set aside... findings only if they are ‘unsupported by the trial evidence or tainted by error of law.’” North Shore Chiropractic v. Norfolk & Dedham Group, 2010 Mass. App. Div. 180, 181, quoting Macone Bros., Inc. v. Strauss, 1997 Mass. App. Div. 95, 96. Such findings must be “clearly erroneous” and regard must be given “to the opportunity of the trial court to judge the credibility of the witnesses.” Mass. R. Civ. R, Rule 52(c). “So long as the judge’s account is plausible in light of the entire record, an appellate court should decline to reverse it” Demoulas v. Demoulas Super Mkts., Inc., 424 Mass. 501, 510 (1997).
Accordingly, the judgment for the defendant on the contract claim is affirmed. That being the case, there was no basis for a finding for the plaintiff on his G.L.c. 93A claim, and no error in the denial of his motion for a new trial.
So ordered.

 In his notice of appeal, however, Cardoso “reserve [d] his right to argue additional or alternative issues for appeal as provided in Rule 8C” of the Dist./Mun. Cts. R. AD. A.

 The agreement was clearly a preprinted form with spaces provided for particular items and particular dollar amounts to be entered at the time the attorney was retained. Contrary to Cardoso’s contention, this was not an adhesion contract, which has been characterized as “a contract that is drafted unilaterally by the dominant party and then presented on a take it or leave it basis to the weaker party, who has no real opportunity to bargain about its terms.” 9 Mass. Jur., Commercial Law §1.3, at 9-10 (1993). See also Miller v. Cotter, 448 Mass. 671 (2007), which notes that the adhesion “label makes no difference” because such contracts are enforceable “unless they are unconscionable, offend public policy, or are shown to be unfair in particular circumstances.” Id. at 684 n.16, quoting Chase Commercial Corp. v. Owen, 32 Mass. App. Ct. 248, 253 (1992). While the shell of the contract here appeared to be a form, the significant terms were left blank to be filled in by the parties. Also, there is no basis to consider these parties as “dominant” or “weaker.”

 In making this argument, Cardoso points to the question mark after the reference to “245 © ” in the agreement. However, that reference creates no doubt as to the scope of Liu’s representation. If anything, it bolsters Liu’s argument that ultimate success required a change in the law.

 While many of the facts in this case are similar to those in Soares, there are critical differences that gave support to the respective findings of the trial judges. As to Soares, there was evidence supporting a finding that he agreed to pay Liu for the sole purpose of obtaining a “green card, “ — and nothing less — and that Liu accepted that money even though he knew, but did not explain to Soares, that attainment of that goal was not possible under the present state of the law. By contrast, in this case, there was evidence supporting a finding that Cardoso was accurately advised of the state of the law, but nevertheless chose to go forward with his application in the hope that he would ultimately obtain a green card as soon as possible if and when the law changed.