Coven, J.
Judgment entered against Oxford Business Brokers, Inc. (“Oxford”) in its action to recover against the defendants, Mary Moriarty (“Moriarty”) and TMJ Enterprises, Inc., for the alleged breach of an exclusive listing agreement by failing to proceed with the sale of a liquor store business to a buyer, produced by Oxford, allegedly ready, able, and willing to complete the transaction. Oxford has appealed the trial judge’s ruling pursuant to Dist./Mun. Cts. R. A D. A, Rule 8A. We conclude that we have jurisdiction to decide the appeal and, after review, dismiss the appeal.[2]
We first address the jurisdictional issue. Judgment entered on September 17, 2012. A motion for relief from judgment and, as labeled, “Reconsideration, Ateration, Amendment, Clarification, and/or New Trial” was filed on September 25, 2012. The motion was taken under advisement on December 3, 2012, and the docket sheet shows a December 14, 2012, entry of the denial of the motion. The docket sheet shows that notice of the denial of the motion was sent to the parties on June 11, 2013. Oxford filed a motion to file a late appeal on July 1, 2013, and that motion was allowed on July 3, 2013.
The time to appeal from the entry of judgment was suspended until the court *131 ruled on Oxford’s motion for a new trial. Essex Chiropractic Office v. Amica Mut. Ins. Co., 2012 Mass. App. Div. 1; Dist/Mun. Cts. R. A. D. A., Rule 4(a). And, pursuant to Rule 14(b) of the Dist./Mun. Cts. R. A. D. A., “[t]he trial court or Appellate Division for good cause shown may upon motion enlarge the time prescribed by these rules or by its order for doing any act, or may permit an act to be done after the expiration of such time; but the time for filing a notice of appeal may not be enlarged beyond 180 days from the date of entry of the judgment or order sought to be reviewed.” Measured from the date on the docket sheet showing that Oxford’s motion for a new trial was denied on December 14, 2012, Oxford appears to have had until June 12, 2013, to file a motion to file a late appeal.
However, in this case, the defendants did not appeal from the trial judge’s allowance of the motion to file- a late appeal. Nor did the defendants appeal the trial judge’s ruling denying their motion to strike the plaintiff’s appeal on the basis that the court lacked the jurisdiction to allow a late filing of the appeal beyond 180 days from the denial of the motion for a new trial. Nonetheless, this issue is jurisdictional, Oyegbola v. DeSimone, 1995 Mass. App. Div. 91, 94, and the issue of whether we have jurisdiction to hear the appeal has been presented to this Division.
Before this Division, there is uncontroverted evidence that between December 3, 2012, and June 10,2013, Oxford’s counsel contacted the trial court at least four times to inquire about the status of its motion for a new trial. Each time, counsel was informed that the trial judge had the motion under consideration and that, when a decision was made, notice of the court’s ruling would be sent to counsel. Again, the representation of counsel for Oxford is uncontroverted that a June 10, 2013, telephone conversation with an identified member of clerk-magistrate’s office prompted the sending of the notice of the denial of the motion for a new trial.[3] Although the docket sheet of a court generally controls, the repeated efforts of Oxford’s counsel and the response to those efforts by the clerk’s office rebut the presumption that the entry of the denial of Oxford’s motion for a new trial was in fact entered on December 14, 2012. The rules do not require a party to inspect physically a court docket to corroborate information provided by a clerk-magistrate’s office before reliance upon those representations is acceptable. Further, in allowing the appeal to proceed, the trial judge noted that in the history of the action, “some fault regarding notification restjed] with the court.” While rare, an entry can be found to have entered nunc pro tunc. See Bronstein v. Lueck, 1992 Mass. App. Div. 5, 6 (1992). In these unusual circumstances, because it is the entry that controls and not the date of the endorsement of denial of the motion (in this case December 14,2012), we proceed as if the appeal is properly before us.
We now turn to the merits and begin by noting that a party appealing a decision of a trial court has an obligation to provide an appellate panel with a full and adequate record of the trial court proceedings to enable the panel to determine the issues presented for review. See Soares v. Law Offices of Martin C. Liu & Assocs., 2011 Mass. App. Div. 96, 99 n.5. Oxford has filed an expedited appeal. It has not proceeded with an appeal on the record of proceedings, pursuant to Dist./Mun. Cts. R. A. D. A., Rule *132 8C, which would have included a transcript of the trial court proceedings. The trial judge, however, made extensive written findings and rulings of law, which, as well as the relevant documents, are part of the record before this panel. We proceed based upon the record as presented.
The trial judge’s ultimate ruling was based on three theories. First, the trial judge held that Oxford had not satisfied its burden that, as a condition precedent to recovery, it had produced a ready, willing, and able buyer for the purchase of the liquor store. Second, the listing agreement was unconscionable and, therefore, unenforceable. And third, if there existed an enforceable agreement, the defendants did not breach the agreement through any wrongful conduct or act in bad faith.
Oxford’s brief is devoted to demonstrating that the trial judge erred in sua sponte deciding that the agreement between the parties was unconscionable and unenforceable. We need not reach this claim of error because we conclude that the findings of the trial judge fully support his conclusion that Oxford did not procure a ready, willing, and able buyer, and the defendants did not breach the agreement through any wrongful conduct or act in bad faith and, therefore, no commission was due.[4]
On April 13, 2005, the parties executed a commercial listing agreement for the defendants’ liquor store. The agreement provided that a ten-percent commission would be due Oxford “[ujpon [Oxford] procuring a purchaser during the listing period within the terms and conditions specified herein or any other price, terms and conditions acceptable to [Moriarty], said compensation to be paid at closing.” Paragraph 5 of the listing agreement provided that “ [i]f [Moriarty] refuses or is unable to comply with the listing terms for any reason, thereby preventing the sale of the business, the commission shall become immediately due by [Moriarty] to [Oxford].” Oxford procured a potential buyer who agreed to purchase the liquor store, contingent on certain matters, for $200,000.00. A written offer to purchase (“OTP”) was signed by Moriarty and the buyer on June 14, 2005. The buyer withdrew on August 3, 2005, although the closing date, as found by the judge, was not until mid-September of 2005.
At issue is whether Oxford is entitled to a broker’s commission even though the sale was never consummated. The conditions for payment of a broker’s commission are met when “(a) [the broker] produces a purchaser ready, willing and able to buy on the terms fixed by the owner, (b) the purchaser enters into a binding contract with the owner to do so, and (c) the purchaser completes the transaction by closing the title in accordance with the provisions of the contract.” Tristram’s Landing, Inc. v. Wait, 367 Mass. 622, 629 (1975) (Tristram), quoting Ellsworth Dobbs, Inc. v. Johnson, 50 N.J. 528, 551 (1967). A commission may be due, however, if the first two conditions of the Tristram test are met and the transaction is not completed because *133 of a seller’s wrongful conduct or interference that thwarted the sale. Hillis v. Lake, 421 Mass. 537, 542 (1995).[5]
Under the terms of the offer, the buyer made an initial deposit of $1,000.00 with an additional deposit of $19,000.00 due upon the acceptance of the offer. The offer was accepted on June 14, 2005. The additional deposit was not fully received until June 24,2005. The offer also stated that the parties were to enter into a mutually satisfactory purchase and sale agreement on or before July 20, 2005. And in an addendum to the OTP, the offer was conditioned on (1) the “buyer obtaining financing (Buyer to obtain commitment by Aug 1 2005),” (2) the buyer “obtaining liquor licenses, tabbacco [sic] & lottery licence,” and (3) the buyer’s “[r]eview and acceptance of all financial information including: Canceled checks, sales slips, invoices and tax returns.” The parties added that this final “contingency will be completed by: within two weeks of being presented [with the documents].”
As stated in the judge’s memorandum of decision, the trial judge found that no evidence was offered that the buyer applied for financing or the licenses. The deposit required was not tendered in compliance with the terms of the offer. And though the defendants did not produce the required financial documents, the offer did not indicate that time was of the essence,[6] and nothing required the defendants to produce the records prior to the buyer complying with the conditions of the offer. The buyer withdrew on August 3, 2005, more than one month prior to the anticipated mid-September closing.
On the record before us, we cannot conclude that the trial judge erred in finding that Oxford did not procure a ready, willing, and able buyer, and the defendants did not breach the agreement through any wrongful conduct or act in bad faith and, therefore, no commission was due.
Appeal dismissed.
So ordered.

 This is the second appeal before this Division. In Oxford Business Brokers, Inc. v. Moriarty, 2008 Mass. App. Div. 224, we vacated the allowance of Oxford’s motion for partial summary judgment on its breach of contract claim, and we directed that summary judgment be entered in favor of Moriarty on count 1 (breach of express contract) , and remanded the case for a new trial on count 2 (breach of implied contract). Once the case was remanded to the District Court, Oxford filed a “waiver of count II,” requested the entry of final judgment, and then appealed the order of the Appellate Division granting summary judgment to Moriarty on count 1. In a Rule 1:28 unpublished decision of the Appeals Court, No. 10-P-448 (Mass. App. Ct. June 10, 2011), the Court concluded that both the initial grant of summary judgment in Oxford’s favor and the subsequent entry of summary judgment in favor of Moriarty were error because material issues of fact remained as to whether Moriarty’s conduct was wrongful and whether Oxford produced a ready, willing, and able buyer.

 This uncontroverted evidence is presented through an affidavit of Oxford’s counsel. The defendants did not file a motion to strike the affidavit.

 The judge made this finding despite the fact that neither party alleged, briefed, or argued below a theory of unconscionability. See Demoulas v. Demoulas, 428 Mass. 555, 575 n.16 (1998) (“ [Generally, a failure to plead an affirmative defense results in a waiver and exclusion of the defense from the case.... [T]he purpose of [Mass. R. Civ. R, Rule] 8(c) is to provide notice to the plaintiffs of defenses that will be raised.”).

 It is permissible for parties to a brokerage agreement to “agree between themselves that the broker’s commission will be earned without compliance with [the conditions specified in Tristram],” Currier v. Kosinski, 24 Mass. App. Ct. 106, 107 (1987), but such agreement must be expressed with sufficient “specificity to alert the seller to the situations in which [s]he can be liable for a broker’s commission even if a sale is not consummated.” Id. The parties have not argued that such an agreement is present in this case.

 Under Massachusetts law, parties will be held to the deadlines they have imposed upon themselves when they agree in writing that time is to be of the essence. McCarthy v. Tobin, 429 Mass. 84, 88 (1999).