MURRAY NUSSENBAUM *vs.* CHAMBERS & CHAMBERS INC.

Suffolk.   October 9, 1947. — February 26, 1948.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & WILLIAMS, JJ.

*Wage Stabilization. Contract,* Validity, Of employment. *Evidence,* Presumptions and burden of proof, Competency, Paper inspected by counsel. *Practice, Civil,* New trial, Judicial discretion.

The policy of the Federal wage stabilization act of 1942 did not make illegal the mere act of entering into an agreement for an increase of salary or wages which might be approved by the proper Federal authority before the time agreed upon for actual payment; the policy of the law would be fully sustained if approval were obtained before payments were made.

In an action for unpaid salary under a contract providing for an increase in salary, the defendant had the burden of proving a defence that the contract was illegal as in violation of the Federal wage stabilization act of 1942.

The mere fact, that payment of an increase of salary under a contract would be illegal under the Federal wage stabilization act of 1942 if the increase were not approved by the proper Federal authority, did not as a matter of law establish illegality of the contract nor preclude maintenance of an action for such increase begun after the stated time for payment, where there was no evidence compelling a finding that the parties intended that payment should be made regardless of

approval and where, before the time for payment arrived, Federal regulations had been so far relaxed that approval had become no longer necessary.

There was no error in the exclusion at a trial of copies of letters from the defendant to the plaintiff, produced and offered by the defendant for his own purposes without notice having been given by him to the plaintiff to produce the originals and without demand for such copies having been made upon him by the plaintiff, although the plaintiff's counsel took in hand one of the copies and read the other copy to himself.

The mere entertaining of a motion for a new trial of an action did not imply that the judge exercised his discretion in favor of considering a question of law which had been open at the trial and therefore was open on the motion only in the discretion of the judge.

CONTRACT. Writ in the Superior Court dated May 23, 1946.

The action was tried before *Baker,* J.

It was agreed that the plaintiff had been paid his salary of $200 per week for the third year of his employment.

*J. N. Worcester, (F. E. Allison & E. H. Bennett, Jr.,* with him,) for the defendant.

*J. H. F. Calver, (J. J. O'Neill* with him,) for the plaintiff.

QUA, C.J.    The plaintiff seeks to recover for services rendered to the defendant as manager of a fur department maintained by the defendant in a department store in Boston. After a verdict for the plaintiff for $10,100, the defendant excepts to the denial of its motions for a directed verdict in its favor, to the exclusion of certain evidence, and to the denial of its motion for a new trial. .

The defendant first employed the plaintiff for the year beginning on or about April 1, 1943. New contracts of employment were entered into for each of the two succeeding years. This action is to recover a balance alleged to be due for the third year, ending on or about April 1, 1946.

On the testimony of the plaintiff, the jury could find that for the first year (except a period at the beginning) the plaintiff was to receive a salary of $150 a week plus a bonus of $5,000 at the end of the year, against which he could draw at any time during the year; that for the second year his compensation was to be the same; but that for the third year he was to receive $200 a week, the same bonus of

$5,000, and in addition either twenty per cent of the profits or $10,000, whichever should be larger. If the jury believed the plaintiff, they could find that a balance as large as the amount of the verdict remained unpaid on the contract.

The ground on which the defendant contends that a verdict should have been directed in its favor is that the increase in the plaintiff's salary (including as salary the $10,000 or share of the profits) agreed upon in the spring of 1945 had not been approved by competent Federal authority under the wage stabilization act of October 2, 1942, 56 U. S. Sts. at Large, 765, §§ 1, 2, 5(a), 10, and 11, and regulations made in pursuance of that act.[1] This defence poses a number of questions which we do not pause to decide, such as: (a) whether the public policy disclosed by the wage stabilization act was so fundamental that the judge was bound to take cognizance of its violation, although the defence was not pleaded (see *Whittingslow* v. *Thomas*, 237 Mass. 103; *Nowell* v. *Equitable Trust Co.* 249 Mass. 585, 595–596; *Morello* v. *Levakis*, 293 Mass. 450, 451–452; *Barsky* v. *Hansen*, 311 Mass. 14, 15; *Gleason* v. *Mann*, 312 Mass. 420, 422); (b) whether the judge was bound to take judicial notice of the Federal regulations without formal proof (see *West* v. *New York, New Haven & Hartford Railroad*, 233 Mass. 162, 166; *Finlay* v. *Eastern Racing Association, Inc.* 308 Mass. 20, 26–27; *Glover* v. *Mitchell*, 319 Mass. 1, 3–4; *Knapp* v. *Graham*, 320 Mass. 50, 57; *Federal Crop Ins. Corp.* v. *Merrill*, 332 U. S. 380); (c) whether there was any evidence by which the plaintiff was bound that approval had not in fact been obtained; and (d) whether there was any obligation on the defendant's part to endeavor to secure approval. If we assume, without decision, that all these questions should be answered in favor of the defendant, we are of opinion, nevertheless, for reasons now to be stated, that the illegality contention did not require the direction of a verdict for the defendant in this case.

In general, illegality in a contract is a defence only because it is against public policy that the court should be called

---

[1] See extending acts of June 30, 1944, 58 U. S. Sts. at Large, 632, § 101; 643, § 203; and of June 30, 1945, 59 U. S. Sts. at Large, 306, § 2.

upon to enforce contracts that the parties have been expressly or impliedly forbidden by law to make or to perform. Courts do not go out of their way to discover some illegal element in a contract or to impose hardship upon the parties beyond that which is necessary to uphold the policy of the law. *Council* v. *Cohen*, 303 Mass. 348, 352. Williston on Contracts (Rev. ed.) § 1629A. We do not believe that the policy of the wage stabilization act rendered illegal the mere act of entering into an agreement for an increase in salary or wages which might be approved by the proper Federal authority before the time agreed upon for actual payment. It would seem that in the orderly course of events negotiation and agreement would commonly precede approval. A rule based upon a contrary expectation would be needlessly harsh in its effect upon many wage earners and salaried persons who had no intent to violate the law. We have no doubt that such a rule would be contrary to the actual practice under the act in a great number of instances. The policy of the law would be fully sustained if approval were obtained before payments were made.

The language of the wage stablization act lends itself readily to this interpretation. The prohibitions of the act were specifically directed against paying or receiving wages or salaries and not against the making of executory agreements. § 5. See also § 4. The penalties of § 11 related to these prohibitions. Executive Order No. 9250, October 3, 1942, 7 Fed. Reg. 7871, dated the day after the enactment of the statute and designed to give effect to it, followed similar lines. This order provided in Title II, § 1, "No increases in wage rates . . . and no decreases in wage rates, shall be authorized unless notice of such increases or decreases" shall have been filed with and approved by the war labor board. Section 5 of the same title, 7 Fed. Reg. 7873, provided, "No increases in salaries now in excess of $5,000 per year . . . shall be granted until . . . .." Section 3 of Title III, 7 Fed. Reg. 7873, read in part, "No provision with respect to wages . . . which is inconsistent with the policy herein enunciated . . . *shall be enforced*[1] ex-

---

[1] Italics ours.

cept . . . ." In the regulations of the economic stabilization director, § 4001.10, 8 Fed. Reg. 11962, it was provided that "In the case of a salary rate . . . no increase shall be made by the employer except as provided in regulations, rulings, or orders promulgated under the authority of these regulations," and that "Except as herein provided, any increase . . . shall be considered in contravention of the Act . . . *from the date of the payment* [1] if such increase is made prior to the approval of the Board or the Commissioner . . . ."

No doubt an agreement to perform an illegal act is commonly an illegal agreement, but the difficulty in applying that doctrine here is that we do not think that any agreement to perform an illegal act is shown as matter of law. The burden of proof was upon the defendant. *Savoy Finance Co.* v. *De Biase,* 281 Mass. 425, 433. *Chamberlain* v. *Employers' Liability Assurance Corp. Ltd.* 289 Mass. 412, 419. There was evidence that both parties knew of the wage stabilization act. There was evidence that the increase in the plaintiff's weekly salary for the third year from $150 to $200 a week was not to begin until approval had been obtained. There was nothing that compelled the jury to find that the parties intended that the increased bonus should be paid at the end of the year regardless of approval. Such intent to violate the law is not to be presumed. The bonus payment for the third year was not to be made until on or about April 1, 1946. At any time before that date approval might be obtained, and then both the making of the contract and the performance of it would be entirely free of any taint of illegality. Many contracts cannot lawfully be performed without securing a permit, license, or approval from some governmental officer or board, and yet the contracts are not deemed illegal. Professor Williston says, "The fact that a party bargains to do an act which will be illegal unless governmental permission is obtained does not make such bargain illegal, and if he does not obtain such permission he is responsible in damages for failure to perform." Williston on Contracts (Rev. ed.) § 1767, note 3.

---

[1] Italics ours.

In *Fox* v. *Rogers*, 171 Mass. 546, this court held that a contract to lay a drain was not illegal even if a required permit had not been obtained, the parties not intending to contract for anything illegal.   See *Holley* v. *Florala Telephone Co.* 223 Ala. 415; *Shedlinsky* v. *Budweiser Brewing Co. Ltd.* 163 N. Y. 437, 439; *Raner* v. *Goldberg*, 244 N. Y. 438; *Standard Oil Co. of New York* v. *Central Dredging Co.* 225 App. Div. (N. Y.) 407; Williston on Contracts (Rev. ed.) § 1758; Restatement: Contracts, § 580.   Before the time for payment arrived on or about April 1, 1946, the regulations had been so far relaxed that approval was no longer necessary.   Executive Order No. 9599, August 18, 1945, 10 Fed. Reg. 10155. National War Labor Board, General Orders, § 803.40, August 20, 1945, 10 Fed. Reg. 10424. Supplementary Wage and Salary Regulations of Office of Stabilization Administrator and Office of War Mobilization and Reconversion, § 4001.103, December 5, 1945, 10 Fed. Reg. 14820.

From what has been said it follows, in our view, that the jury could find that at no material time was either the making of the contract for the third year or the performance of it unlawful, and therefore the defendant's motion for a directed verdict could not properly have been granted.

There was no error in the exclusion of copies of two letters from the defendant to the plaintiff offered by the defendant.   It did not appear that notice to produce the originals had been given to the plaintiff.   The rule of *Clark* v. *Fletcher*, 1 Allen, 53, 57, does not apply.   Although counsel for the plaintiff took in his hands at the trial a copy of one of the letters and read, apparently to himself, a copy of the other, neither copy had been first produced at the trial in response to any actual demand by him.   Both had been first produced by the defendant for its own purposes to refresh the recollection of the witness or to prove on redirect examination the existence of letters upon the existence of which the previous cross-examination had tended to throw doubt.   *Capodilupo* v. *F. W. Stock & Sons*, 237 Mass. 550, 551–552.   *Leonard* v. *Taylor*, 315 Mass. 580, 582.

There was no error of law in the denial of the defendant's

motion for a new trial. In so far as the motion raised questions whether the verdict was against the weight of the evidence or excessive in amount, its denial was within the discretion of the judge. *Murnane* v. *MacDonald*, 294 Mass. 372. *Kinnear* v. *General Mills, Inc.* 308 Mass. 344, 348–349. No abuse of discretion appears. *Bartley* v. *Phillips*, 317 Mass. 35, 43–44. If the motion was intended to raise questions of law, these questions were open at the trial and could not, except at the discretion of the judge, be raised on a motion for new trial, and the mere entertaining of the motion did not imply the exercise of discretion in favor of opening such questions. *Commonwealth* v. *Venuti*, 315 Mass. 255, 261–262, and cases cited.

We have dealt with all points saved.

*Exceptions overruled.*