McGill, J.
When the defendant contractor paid $5,000.00 for the plaintiff subcontractor’s three days of work, the plaintiff brought a contract action seeking additional costs and damages. After a jury-waived trial on the merits of this case, written findings issued and judgment entered in favor of the plaintiff against the defendant. Specifically, the trial judge determined that the plaintiff proved a contract existed only for the first day of work, but proved only quantum meruit for the next two days of work. The plaintiff filed this Dist./Mun. Cts. RAD. A., Rule 8C, appeal of the judg *50 ment, damages award, and the court’s finding of no contract for the final two days of work. We reverse in part and affirm in part.
First, we reverse the trial judge’s conclusion that the document signed after the first day of work constituted a contract between the parties. Based upon the trial judge’s findings of fact, we find that sometime before the first day of work, the plaintiff entered into an oral contract with the defendant to perform all work for $5,000.00. This $5,000.00 contract governed all work performed thereunder. The trial judge’s findings of fact do not show proof of any receipt of any consideration for the defendant’s promise to pay an increased rate of payment on the original contract reflected in the documents signed after the first day of work. Second, we affirm the trial judge’s conclusion that the two signed documents, signed after the original contract on the first day of work, were merely “invoices” and not contracts. However, since the initial $5,000.00 contract governs all work performed, we reverse the trial judge’s award of quantum meruit for the final two days of work. Lastly, we find that G.L.c. 261, §1 and Mass. R. Civ. P., Rule 54(d), do not authorize the plaintiffs recovery of attorney’s fees.
In order to detail our decision, a brief recitation of the facts as warranted by the record is appropriate.[3] In 2008, pursuant to a public bidding process, the defendant, Moráis Concrete Service, Inc. (“Moráis”), entered into a contract with the town of Longmeadow for various site work at two locations. The two sites were located at Mill Road and Fenwood Road in Longmeadow. The municipal contract included, among other things, the removal of trees, installation of drainage devices, and landscaping and backfill at the two sites. Moráis hired the plaintiff, Paul B. Cocchi, doing business as Paul’s Tree Service (“Cocchi”), as a subcontractor to perform the work regarding the removal of trees, brush, and debris on the project based on a price quote of $5,000.00 for the site work. At some point after this agreement, Moráis told Cocchi that he needed to pay his employees the prevailing wage rate because the work was pursuant to a municipal contract. Although Cocchi usually paid his employees $12.00 to $14.00 per hour, the prevailing hourly wage for a chainsaw operator at the time was $36.59 and the prevailing hourly wage for a bucket truck operator was $43.00 per hour.
On October 16, 2008, Cocchi and two employees worked for seven hours at the Fenwood Road site and, after the work was completed, presented a bill for $2,100.00. The bill indicated that Cocchi and each of his two employees would be paid $43.00 per hour, and that he would charge 65% for overhead. The bill also included an hourly *51 charge for the use of a chipper ($15.00) and a bucket loader ($75.00). In total, Cocchi’s rate, now including the prevailing wage, would be $300.00 per hour. Morais’s agent approved the price for the equipment and hourly costs plus overhead for that day only. The agent informed Cocchi that he would have to address the increased charges and costs with Moráis. However, Cocchi did additional work without discussing the additional charges and costs, including 62 more work hours at the sites. On October 25, 2008, after completing work on the Fenwood Road site, Cocchi presented a bill for services for $13,500.00, citing a $300.00 hourly rate. This amount included seven hours of work on October 16,2008. On October 30,2008, Moráis paid Cocchi a total of $5,000.00. On November 6,2008, after completing work on the Mill Road site, Cocchi presented a further bill for services for $7,200.00 for a total demand of $15,700.00, less the previously paid $5,000.00. Moráis offered to pay an additional $5,000.00. The lawsuit ensued.
Contract formation requires a bargain in which there is a manifestation of mutual assent to the exchange. I & R Mechanical, Inc. v. Hazelton Mfg. Co., 62 Mass. App. Ct. 452, 454-455 (2004), citing Situation Mgt. Sys., Inc. v. Malouf, Inc., 430 Mass. 875, 878 (2000). The manifestation of mutual assent between contracting parties generally consists of an offer by one and the acceptance of it by the other. Id at 455, citing RESTATEMENT (SECOND) OF CONTRACTS §22(1) (1981). An offer is the manifestation of willingness to enter into a bargain made in such a way as to justify the other person in understanding that his assent will conclude the agreement. Levenson v. L.M.I. Realty Corp., 31 Mass. App. Ct. 127, 130 (1991). Although “[ajdvertisements, price quotations, and price lists generally do not constitute offers but are instead usually considered requests for offers or invitations to negotiate,” I & R Mechanical, Inc., supra at 455, a price quote, directed to a specific individual or entity regarding a specific job, may in some circumstances constitute an offer. See Loranger Constr. Corp. v. E.F. Hauserman Co., 376 Mass. 757, 760 (1978) (Loranger). In Loranger, the defendant subcontractor submitted a price quotation to the plaintiff general contractor estimating that the defendant could perform the requested work for $15,900.00. Id at 759. When the defendant refused to perform the work for the quoted price, the plaintiff engaged another subcontractor at a higher rate and later initiated suit against the defendant for the difference in price. Id. The Court determined that the defendant’s quotation constituted an offer to perform the work for the quoted price. Id at 760. In I & R Mechanical, Inc. v. Hazelton Mfg. Co., the Court, citing Loranger, noted that “there was evidence [in Loranger] that the supplier prepared its ‘quotation’ based on information from the architect’s office; contacted the general contractor directly by telephone to give the quotation; and proposed in its quotation to actually perform a portion of the work, and not simply supply materials.” I & R Mechanical, Inc., supra at 456. Further, the Court in Loranger distinguished the case from Cannavino & Shea, Inc. v. Water Works Supply Corp., 361 Mass. 353 (1972), in that it did not involve the general circulation of a price list to many contractors ■without a specification of quantify. Loranger, supra at 760.
Additionally, in order to establish a contract, the general rule is that a promise by one party to another must be supported by legal consideration moving from the prom-isee to the promisor. Marine Contrs. Co. v. Hurley, 365 Mass. 280, 286 (1974), citing Cottage St. Methodist Episcopal Church v. Kendall, 121 Mass. 528, 529-530 (1877). A *52 court generally “does not concern itself with the adequacy of consideration.” Graphic Arts Finishers, Inc. v. Boston Redev. Auth., 357 Mass. 40, 43 (1970). It is enough that the consideration is valuable; it need not be adequate. Barnett v. Rosen, 235 Mass. 244, 249 (1920).[4] However, a subsequent promise given in exchange for the other party’s prior performance does not qualify as consideration. See Henry W. Savage, Inc. v. Friedberg, 322 Mass. 321, 323 (1948), citing, inter alia, Chamberlin v. Whitford, 102 Mass. 448, 450 (1869).
“As a general proposition, it is settled in this Commonwealth that a promise to pay one for doing that which he was under a prior legal duty to do is not binding for want of a valid consideration.” Melotte v. Tucci, 319 Mass. 490, 491 (1946), citing, inter alia, Warren v. Hodge, 121 Mass. 106, 107 (1876). In other words, “performance of an existing legal duty or contractual obligation is not sufficient consideration for a new promise by the obligee.” Boston Professional Hockey Ass’n v. Commissioner of Revenue, 443 Mass. 276, 287 (2005), quoting Sloan v. Burrows, 357 Mass. 412, 415 (1970).
While an existing construction contract may be modified, there must be mutual assent to, and consideration for, the modification. Okerman v. VA Software Corp., 69 Mass. App. Ct. 771, 781 (2007), citing Gishen v. Dura Corp., 362 Mass. 177, 182-183 (1972). In Munroe v. Perkins, 26 Mass. 298 (1830), a plaintiff contractor entered into a written contract with a defendant hotel owner to construct a building. In the course of constructing the building, the plaintiff, having realized that the contract price was less than what the building would actually cost to construct, informed the defendant that he was unable and unwilling to continue the work. Id. at 303. The defendant assured the plaintiff that he would receive reasonable compensation for the cost of constructing the building and that he should continue the work without regard to the contract price. Id. The Court held that the defendant received consideration for his subsequent agreement to modify the contract price, noting that “ [it] depends entirely on the question, whether the first contract was waived.” Id. at 305. “The plaintiff having refused to perform that contract... afterward went on upon the faith of the new promise and finished the work. This was sufficient consideration. If [the defendant] were willing to accept his relinquishment of the old contract and proceed on a new agreement, the law, we think, would not prevent it.” Id.
Relying on Loranger, we find that Cocchi’s price quotation of $5,000.00 for the removal of trees, brush, and debris from two job sites in the town of Longmeadow was an offer, which Moráis accepted, to perform that work for that agreed-upon price of $5,000.00. Cocchi’s quotation was in reference to a specific job, dealing with a specific customer; it was not merely a price list of general circulation. Further, as in Loranger, Cocchi negotiated directly with Moráis in contracting to perform actual work on the two sites. Cocchi’s $5,000.00 price quote justified Moráis in understanding that its assent would conclude the agreement on those terms. Levenson, supra at 130. Therefore, this offer by Cocchi, accepted by Moráis, manifested a mutual assent to form a contract for the removal of trees, brush, and debris from two job sites for a price of $5,000.00.
*53 It should be noted that this Division considered whether the initial $5,000.00 contract is void due to the lack of an explicit agreement between the parties that Cocchi’s employees would be compensated at the prevailing wage rate. Two Massachusetts statutes are particularly relevant to this issue: G.L.c. 149, §27F and G.Lc. 149, §26. Section 27F provides, in part:
No agreement of lease, rental or other arrangement, and no order or requisition under which a truck or any automotive or other vehicle or equipment is to be engaged in public works by the commonwealth or by a county, city, town or district, shall be entered into or given by any public official or public body unless said agreement, order or requisition contains a stipulation requiring prescribed rates of wages, as determined by the commissioner, to be paid to the operators of said trucks, vehicles or equipment. Any such agreement, order or requisition which does not contain said stipulation shall be invalid, and no payment shall be made thereunder.
Section 26 of G.L.c. 149 provides, in part, that “[i]n the employment of mechanics and apprentices, teamsters, chauffeurs and laborers in the construction of public works by the commonwealth, or by a county, town, authority or district, or by persons contracting or subcontracting for such works, ... [t]he rate per hour of the wages paid to said mechanics and apprentices, teamsters, chauffeurs and laborers in the construction of public works shall not be less than the rate or rates of wages to be determined by the commissioner as hereinafter provided.”
Ultimately, we have determined that the contract does not violate either statute. A city, town, or municipal contract for public works in violation of G.L.c. 149, §27F is void as against public policy in accordance with the specific language of that statute. See McGrath v. ACT, Inc., 2008 Mass. App. Div. 257, 260. However, unlike §27F, G.L.c. 149, §26 does not specifically state that a contract made in violation of its terms is void. If a statute does not expressly declare a contract made in violation of it void, and it is not necessary to hold the contract void in order to accomplish the purposes of the statute, the inference is that the statute was intended to be directory and not prohibitory of the contract. City of Lawrence v. Falzarano, 380 Mass. 18, 22 (1980), citing Bowditch v. New England Mut. Life Ins. Co., 141 Mass. 292, 295 (1986). Consistent with this rule is the general principle that “[c]ourts do not go out of their way to discover some illegal element in a contract or impose hardship upon the parties beyond that which is necessary to uphold the policy of the law.” Nussenbaum v. Chambers & Chambers Inc., 322 Mass. 419, 422 (1948), citing Council v. Cohen, 303 Mass. 348, 352 (1939). Rather, “a contract should be construed to give it effect as a rational business instrument and in a manner which will carry out the intent of the parties.” Shane v. Winter Hill Fed. Sav. & Loan Ass’n, 397 Mass. 479, 483 (1986), citing McMahon v. Monarch Life Ins. Co., 345 Mass. 261, 264 (1962). In the process of interpreting the parties’ agreement, “intent to violate the law is not to be presumed.” Nussenbaum, supra at 423. Regardless of whether Cocchi and his employees are deemed “operators of... equipment” governed by §27F, or “laborers” governed by §26, the contract can be interpreted consistently with the mandates of those statutes.
*54 General Laws c. 149, §27F provides that “[n]o agreement of lease, rental or other arrangement... under which a truck or any automotive or other vehicle or equipment is to be engaged in public works ... shall be entered into or given by any public official or public body unless said agreement, order or requisition contains a stipulation requiring prescribed rates of wages, as determined by the commissioner, to be paid to the operators of said trucks, vehicles or equipment.” The language “entered into or given by any public official or public body” is of central importance. The subcontract here was not “entered into or given” by a public official or public body; it is an entirely private arrangement entered into by a general contractor and a subcontractor. The fact that the initial $5,000.00 subcontract lacks a stipulation requiring that the prevailing wage be paid to operators of equipment employed on the project is not, according to the plain language of the statute, a violation of §27F.
General Laws c. 149, §26 requires that “[t]he rate per hour of the wages paid to... mechanics and apprentices, teamsters, chauffeurs and laborers in the construction of public works shall not be less than the rate or rates of wages to be determined by the commissioner as hereinafter provided; provided, that the wages paid to laborers employed on said works shall not be less than those paid to laborers in the municipal service of the town or towns where said works are being constructed.” Nothing in this statute requires that a contract, or subcontract, for public works expressly state that laborers on such projects are entitled to the prevailing wage. All that is required is that such laborers are actually paid at the prevailing rate. There is nothing in the record to suggest that Cocchi did not compensate his employees at the prevailing wage rate for all work performed under the initial $5,000.00 subcontract. As noted above, in the process of interpreting the parties’ agreement, “intent to violate the law is not to be presumed.” Nussenbaum, supra at 423. Moreover, the fact that the contract would have been illegal had Cocchi not paid his employees the prevailing wage rate is of no consequence. Id. “Many contracts cannot lawfully be performed without securing a permit, license, or approval from some governmental officer or board, and yet the contracts are not deemed illegal.” Id.
We reverse the trial court’s finding that the document, signed after the first day of work, constituted a valid contract for that day’s work, but we affirm his finding that the two following documents were not contracts. The document signed after the first day covered only the first seven hours of work performed at the Fenwood Road site and was signed after Cocchi and his two employees completed the work for the day. Because Morais’s signature on the document signifies a subsequent promise to pay for work already performed, this promise was unsupported by consideration and fails as a contract. Henry W. Savage, Inc., supra at 323. Similarly, Moráis signed the October 25, 2008 document and the November 6, 2008 document after Cocchi had completed the work at the Fenwood Road site and the Mill Road site, respectively. Likewise, these documents are not contracts.
Cocchi had a preexisting duty under the initial $5,000.00 contract to perform the agreed-upon work at both of the sites, in accordance with the terms of the contract, for a total of $5,000.00. Boston Professional Hockey Ass’n, supra at 287. Regardless of whether Morais’s signature on each of the three subsequent documents constitutes assent to the terms of those documents, Moráis received no further consideration for its promise to pay Cocchi the additional moneys. Therefore, these documents fail as modifications of the initial $5,000.00 contract. Okerman, supra *55 at 781. The present case is distinguishable from Munroe v. Perkins, 26 Mass. 298 (1830). In Munroe, the defendant explicitly told the plaintiff to disregard the initial contract and promised the plaintiff that he would receive reasonable compensation for his work, thus waiving the initial contract and creating a new contract in its place. As the Court expressed, “[it] depends entirely on the question, whether the first contract was waived.” Id. at 305. In the present case, Moráis encouraged Cocchi to renegotiate the initial $5,000.00 contract. There is no evidence in the record to suggest that Cocchi ever undertook such a renegotiation. Consequently, Cocchi retained a preexisting contractual duty to perform the entirety of the work for $5,000.00 as agreed in the initial contract, and Moráis received no additional consideration for its promise to pay Cocchi at the increased rate reflected in the three subsequent documents.[5]
We also reverse the trial judge’s award of quantum meruit for the last two days of work. In general, when a contract between parties exists, “[t]here is excellent reason to look to the terms of the contract... to govern the measure of compensation. The contract provisions will disclose ... what the contracting parties thought was appropriate, thus obviating an extended inquiry into external sources of information as to what may be fair compensation.” Fay, Spofford & Thorndike, Inc. v. Massachusetts Port Auth., 7 Mass. App. Ct. 336, 341 (1979). Since the parties executed a valid contract, according to which Cocchi would perform all work for $5,000.00, there is no need to inquire into quantum meruit as a basis for recovery.
Finally, we find that Cocchi is not entitled to reasonable attorney’s fees as a cost allowable under G.L.c. 261, §1[6] or under Mass. R. Civ. P., Rule 54(d).[7] Although *56 “[c]ounsel fees are awarded not as separate and distinct from costs but as part of costs,” Boynton v. Tarbell, 272 Mass. 142, 145 (1930), “Massachusetts follows... the ‘traditional “American rule,” which teaches that attorney’s fees are not ordinarily recoverable in the absence of a statute, court rule, enforceable contract or stipulation providing therefor.’” Shorr v. Professional Photographers of Am., Inc., 1997 Mass. App. Div. 61, 63, quoting Bournewood Hosp., Inc. v. Massachusetts Comm’n Against Discrimination, 371 Mass. 303, 308 (1976). The initial $5,000.00 contract involved no discussion of attorney’s fees; nor do any relevant statutes contain provisions specifically providing that a subcontractor on a public works project may recover attorney’s fees in an action for breach against a general contractor. Since the Legislature is ‘“presumed to have known of [the Court’s previous] decision [s]’ affirming the vitality of the American rule,” Waldman v. American Honda Motor Co., 413 Mass. 320, 323 (1992), quoting Crown Shade & Screen Co. v. Karlburg, 332 Mass. 229, 231 (1955), in the absence of an explicit statement reversing the American rule, “[the Court] assume[s] the Legislature did not intend to do so.” Id. Had the drafters of Rule 54(d), or of G.L.C. 261, §1, intended to include attorney’s fees within the meaning of costs allowable “as of course,” they would have “plainly and expressly done so.” Shorr, supra at 63. Further, “ [i] t is altogether appropriate that the person who, in doubtful circumstances, unleashes the dogs of war should bear the heavier burden of legal costs.” Strand v. Hubbard, 31 Mass. App. Ct. 914, 915 (1991).
For the foregoing reasons, we determine that the plaintiff is entitled to a total of $5,000.00 as agreed in the initial oral contract. We reverse the trial judge’s award of contract damages for the first day of work, as well as the trial judge’s award of quantum meruit for the final two days of work. Finally, we decline to award the plaintiff attorney’s fees. The case is returned to the Palmer Division of the District Court Department for entry of judgment in favor of the defendant.
So ordered.

 ‘“An appellate court will set aside ... findings only if they are “unsupported by the trial evidence or tainted by error of law.’” North Shore Chiropractic v. Norfolk & Dedham Group, 2010 Mass. App. Div. 180, 181, quoting Macone Bros., Inc. v. Strauss, 1997 Mass. App. Div. 95, 96. Such findings must be ‘clearly erroneous’ and regard must be given ‘to the opportunity of the trial court to judge the credibility of the witnesses.’ Mass. R. Civ. P., Rule 52(c). ‘So long as the judge’s account is plausible in light of the entire record, an appellate court should decline to reverse it.’ Demoulas v. Demoulas Super Mkts., Inc., 424 Mass. 501, 510 (1997).” Advanced Spine Ctrs., Inc. v. Enterprise Rent-A-Car Co. of Boston, Inc., 2012 Mass. App. Div. 117, 118, quoting Cardoso v. Law Offices of Martin C. Liu & Assocs., PLLC, 2011 Mass. App. Div. 102, 106.

 This rule is based upon the concept of freedom of contract and the reluctance of courts to protect someone from the effects of having made an unwise choice or a bad bargain. J.M. PERILLO, CALAMAR! AND PERILLO ON CONTRACTS §4.4, at 154-155 (6th ed. 2009).

 It may be argued that a $5,000.00 recovery, which is well below the actual cost of performing the work in accordance with the prevailing wage requirement, would render Cocchi unable to pay his employees at the prevailing wage, thus violating G.L.c. 149, §§26, 27F. This argument is unpersuasive. As noted, courts are reluctant to protect someone from the effects of having made an unwise choice or a bad bargain. J.M. PERILLO, CALAMARI AND PERILLO ON CONTRACTS, supra. Cocchi’s failure to consider the consequences of his entering into a prevailing wage contract at a price well below the actual value of the work should not excuse his compliance with the law. Further, it cannot be said that Cocchi’s agreement to perform the work at this price is per se unreasonable. While some Massachusetts “loss-leader” statutes, such as G.L.c. 64C, §14(a), prohibit the sale or advertisement of cigarettes at prices below the merchant? s cost “with intent to injure competitors [or to] destroy substantially or lessen competition,” §14(a), no such prohibitions exist with respect to public construction contracts. It is entirely possible that Cocchi elected to take a loss on the initial $5,000.00 contract as a “loss-leader” in an attempt to secure an advantage over his competitors on future public contracts. In either event, the mere fact that Cocchi did not earn enough on this particular contract to compensate his employees at the prevailing wage rate should not excuse him from his obligation to do so under G.L.c. 149, §§26,27F.

 “In civil actions the prevailing party shall recover his costs, except as otherwise provided.” G.L.c. 261, §1.

 “When express provision therefor is made either in a statute of the Commonwealth or in these rules, costs shall be allowed as of course to the prevailing party unless the court directs otherwise....” Mass. R. Civ. P., Rule 54(d).